[L. A. No. 3115. Department One.—May 27, 1913.]

FRANK P. BACON, Respondent, v. CHARLES E. GROSSE, Defendant and Appellant; UNION OIL COMPANY OF CALIFORNIA (a Corporation), et al., Defendants and Respondents.

CORPORATION—OFFER TO SELL STOCK AND BONDS OF ANOTHER CORPORATION.—A corporation, which is the owner of the stock and bonds of another corporation, is not bound by any rule of law to limit the sale thereof to its own stockholders.

ID.—UNLIMITED OFFER FOR SUBSCRIPTION BY STOCKHOLDERS—SUBSCRIPTION BY STOCKHOLDER FOR BENEFIT OF NONSTOCKHOLDER—ABSENCE OF FRAUD ON CORPORATION.—Where a corporation, owning the stock and bonds of another corporation, offers the same for sale to its own stockholders, without in terms prohibiting a stockholder from subscribing for more than he intended to retain on his own account, or from subscribing on behalf of some one not a stockholder, or limiting the right of subscription in proportion to the subscribers' stock ownership, but, on the contrary, reserves the right to make

such allotments to the subscribers as may in its judgment seem just and equitable to all of its stockholders, a subscription to and purchase of such stock and bonds by a stockholder, ostensibly in his own name but in reality for the benefit of a person not a stockholder who furnished the consideration for the purchase, and who was known to the corporation as the beneficial purchaser before it issued its certificate evidencing the transfer, is not a fraud on the corporation of which the stockholder making the subscription is entitled to complain, in justification of his refusal to deliver the stock and bonds to the person in whose behalf the purchase was made, where it does not appear that any other stockholder of the seller had ever complained that he had received a smaller allotment than he was entitled to.

ID.—EVIDENCE TO VARY WRITTEN OFFER FOR SUBSCRIPTIONS.—In an action by the beneficial purchaser to compel the delivery to him of the stock and bonds purchased on his behalf, it was not error to exclude parol evidence of the intention of the selling corporation to limit the terms of its offer, in contravention of the terms of a written circular in which its offer was made.

ID.—PROMISE TO SUBSCRIBE FOR NONSTOCKHOLDER NOT CONDITIONAL—FAILURE OF CONSIDERATION.—It is held, upon a review of the evidence, that the appellant's promise to make the subscription for the benefit of the plaintiff, which was communicated in a letter addressed to an agent of the latter, was not conditional upon such agent's agreement to provide at any future time for such credit as he might desire, and the fact that the agent did not render such financial assistance, prior to the consummation of the purchase, which was effected by the appellant without any request therefor, did not constitute a failure of consideration for the promise.

ID.—EVIDENCE—OFFER OF PART OF DEPOSITION—INTRODUCTION OF REST BY ADVERSE PARTY—APPEAL.—As a general rule, the offer by a party of a part of a deposition does not necessarily authorize the adversary to introduce the rest of it. His right is limited to the offer of such other parts as related to the same subject. Where, however, the court permits the adversary to offer the entire deposition, its action cannot be deemed erroneous on appeal, if the substance of the deposition is not embodied in the record.

ID.—CONSIDERATION—PROMISE TO SUBSCRIBE FOR ANOTHER—PAYMENT OF SUBSCRIPTION PRICE.—It is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a prejudice be suffered or agreed to be suffered by the promisee. Consequently the payment of the subscription price of the stocks and bonds of the plaintiff was a good consideration for the agreement of the nominal subscriber to transfer them to him

ID.—PAROL EVIDENCE TO VARY MEANING OF LETTERS.—Where the meaning of letters exchanged between the parties and of the circular

offering the stock and bonds for subscription was perfectly plain, evidence to vary their terms was inadmissible.

ID.—OSTENSIBLE SUBSCRIBER BECAME TRUSTEE OF BENEFICIARY—EQUITY WILL SPECIFICALLY ENFORCE TRUST.—After the stockholder, in pursuance of his agreement to that effect, had subscribed for and received the allotment of stock and bonds for the benefit of the person who paid the consideration therefor, he became a trustee for the latter, and equity will compel him to transfer the same to the beneficial owner, and will not remit the latter to an action at law.

ID.—EQUITY WILL SPECIFICALLY ENFORCE TRUST AS TO PERSONAL PROPERTY.—The general rule that equity will not compel the delivery of specific personal property wrongfully withheld, nor enforce the specific performance of a contract to sell chattels, unless it is shown that money damages for the breach of the obligation would not afford adequate relief, is not applicable to a suit by the beneficiary against his trustee to enforce a trust as to personal property.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. George E. Church, Judge presiding.

The facts are stated in the opinion of the court.

Lee Riddle, and Morton, Hollzer & Morton, for Appellant.

Edwin A. Meserve, and Paul H. McPherrin, for Plaintiff and Respondent.

Lewis W. Andrews, and Cedric E. Johnson, for Defendants and Respondents.

SLOSS, J.—This is an appeal by the defendant Charles E. Grosse from a judgment requiring the transfer to the plaintiff of certificates evidencing the ownership of twenty thousand dollars of bonds, and two hundred shares of the capital stock, of Producers' Transportation Company, a California corporation. Grosse also appeals from an order denying his motion for a new trial.

It appears that said corporation had authorized an issue of three million five hundred thousand dollars of bonds of the denomination of one thousand dollars each. Said bonds, together with the capital stock of the Producers' Transportation Company, came into the ownership or under the control of Union Oil Company of California, one of the defendants.

On July 1, 1909, said Union Oil Company issued a circular to holders of its stock and of the stock of two affiliated corporations, offering for sale to such holders one million five hundred thousand dollars of bonds of Producers' Transportation Company, together with a like amount of the stock of said last-named company, at the price of one thousand dollars for each bond and ten shares (of the par value of one hundred dollars each) of the stock.

The complaint alleges that the plaintiff, through his agent, W. N. Hamaker, applied to the Union Oil Company to purchase twenty thousand dollars of said bonds and a like amount of stock, but was informed that the subscription should be made in the name of a stockholder of the Union Oil Company or of one of its affiliated companies. Thereupon plaintiff applied to the defendant Grosse, who was a stockholder of the Union Oil Company, for permission to subscribe for and purchase such bonds and stock in Grosse's name. The permission was granted, and a written subscription for twenty thousand dollars of said bonds and stock presented to the Union Oil Company. At the same time Grosse subscribed for a like amount of the bonds and stock in his own behalf. The Union Oil Company awarded and set apart to the plaintiff twenty bonds of the Producers' Transportation Company and two hundred shares of its capital stock and set apart a like amount of said bonds and stock to Grosse. Full payment for said bonds and stock was made by the plaintiff and Grosse, each of them paying to the said Union Oil Company the sum of twenty thousand dollars. On the twenty-eighth day of July, 1909, Grosse executed and delivered to plaintiff bills of sale purporting to transfer to plaintiff twenty bonds and a certificate for two hundred shares of the capital stock of the said Producers' Transportation Company. Notwithstanding such assignments, notice of which was given to the Union Oil Company, a single certificate for four hundred shares of the capital stock of the Producers' Transportation Company was issued in the name of Grosse and delivered to him. The bonds were not issued directly to the purchasers, but were delivered to the Los Angeles Trust & Savings Bank, which, on its part, furnished to the purchasers receipts or certificates reciting that said Trust & Savings Bank held the bonds in trust for such respective purchasers. Such a re-

ceipt or certificate representing forty bonds was executed in Grosse's name and delivered to him. It is further alleged that ever since the delivery to Grosse of the certificate for four hundred shares of the stock and of the trustee's certificate for forty bonds, said Grosse has claimed to own said stock and bonds, including the one-half thereof bought and paid for by the plaintiff as his own, and refuses to surrender said certificate of stock or said trustee's certificate for bonds so as to permit a new certificate for two hundred shares of the stock and a trustee's certificate for twenty bonds to be issued to the plaintiff.

The complaint alleges that the stock and bonds are rapidly advancing in price and that they are now worth in excess of twenty-six thousand dollars. The prayer is for judgment for the sum of forty thousand dollars, that the defendant Grosse be required to surrender to the Producers' Transportation Company the certificate for four hundred shares of the capital stock and that said certificate be canceled and a new certificate issued to the plaintiff for two hundred shares; that Grosse be directed to surrender to the Los Angeles Trust & Savings Bank the trustee's certificate for the forty bonds and that said certificate be canceled and a new one issued to plaintiff for twenty bonds.

Answers were filed denying many of the allegations of the complaint. The answer of the defendant Grosse also set up as an affirmative defense that the device whereby plaintiff subscribed for stock and bonds of the Producers' Transportation Company in the name of said defendant Grosse was a fraud upon the Union Oil Company and its stockholders in that it evaded and thwarted the object and intention of said Union Oil Company to limit the right of subscribing to said stock and bonds to the holders of its stock or that of its two affiliated companies. It also alleged a failure of the consideration upon which Grosse permitted plaintiff's agent Hamaker to use his (Grosse's) subscription rights for plaintiff's benefit, and set up that prior to the filing of his answer he had offered to return plaintiff the sum of twenty thousand dollars paid by him, together with interest, which offer had been refused.

The findings were in favor of plaintiff and followed, substantially, the allegations of the complaint. With the excep-

tion of the demand for money damages the judgment was in accord with the prayer of the complaint, that is to say, it required the surrender by Grosse of the certificate of stock and the trustee's certificate for bonds held by him and the issuance of other certificates for two hundred shares of the stock and for twenty bonds to plaintiff and Grosse respectively.

The findings, so far as they set forth the transaction between plaintiff and Grosse, are fully sustained by documentary evidence, the authenticity of which is not questioned. A circular of the Union Oil Company, offering the stock and bonds of the Producers' Transportation Company for subscription, had been sent to each of its stockholders and Grosse had received a copy thereof. On July 17, 1909, Hamaker, who was connected with the First National Bank of Los Angeles, wrote to Grosse a letter, in which he used this language: "For one of our very good customers I very much desire the subscription privileges of some holder of stock of the Union Oil Co. or its affiliated companies, for the bonds, together with the bonus stock, of the Producers' Transportation Co. . . . I recall your having been a very heavy owner of this stock and if you are not going to consume all of your subscription privileges, I would like the same up to $20,000, and am holding that amount with which to pay the same and would make cash payment to the company immediately on their advice to you of allotment." To this letter Grosse replied on July 18th, stating, in effect, that he desired to subscribe for twenty thousand dollars of the bonds and stock himself, and going on as follows: "Considering the matter still further, I will take $20,000 worth of the bonds, and you may fill out the blank for as much more as you think you want and can get, and all of the excess over a $20,000 allotment you may have. . . . If the subscription should be scaled down, however, you will have to provide only for such an amount, in excess of the $20,000, which I want, as the allotment calls for." With this letter he inclosed a form of subscription for the stock and bonds with his name signed thereto, but with the amount subscribed for left in blank. This form Hamaker filled in for forty thousand dollars and he deposited it with the Union Oil Company, paying at the same time three thousand dollars, the amount of the deposit required upon a

twenty thousand dollar subscription. He also communicated with Grosse relative to the necessity of the latter making a like deposit. The bonds and stock were subsequently issued in Grosse's name in the manner stated in the complaint. Before this time, however, Hamaker had notified Grosse that the principal for whom he had been acting was the plaintiff Frank P. Bacon and bills of sale transferring two hundred shares of the stock and twenty bonds to Bacon had been executed by Grosse and sent to Hamaker.

Hamaker testified that, before he communicated with Grosse, Bacon had informed him he desired to invest twenty thousand dollars in the bonds and stock of the Producers' Transportation Company, that he (Hamaker) had applied to the Union Oil Company to purchase twenty thousand dollars of such bonds and stock and had been told by the secretary of the company that he had no right to subscribe, but that "if he could get in touch with some stockholder of either the Union Oil Company or its two affiliated companies he undoubtedly would have no trouble." At the trial the Union Oil Company, by its attorney, declared that it was not concerned in the question whether the plaintiff or Grosse should become the owner of the stock and bonds in dispute. No stockholder of the Union Oil Company or of its affiliated companies has ever, so far as the record discloses, complained of the fact that this subscription was made by Grosse for plaintiff's benefit.

Under these circumstances we think there is no force in appellant's contention that this transaction constituted a fraud of which the appellant is entitled to complain. The Union Oil Company, as the owner of the stock and bonds of the Producers' Transportation Company, was not bound by any rule of law to limit the sale to its own stockholders. The circular which it issued did undoubtedly thus confine the offer, but there was nothing in its terms to prohibit a stockholder from subscribing for more bonds than he intended to retain on his own account or from subscribing on behalf of some one not a stockholder. The circular did not prohibit the transfer of rights, after a subscription should have been made. It did not even assume to grant to the stockholders the absolute right to receive bonds and stock of the Producers' Company in proportion to their holdings in the Union Oil Com-

pany. On the contrary, the directors of the Union Oil Company expressly reserved the right "to make such awards or allotments to the subscribers as may in its judgment or discretion seem just and equitable and in the interests of all the stockholders of the company." This reservation left it open to the Union Oil Company to decide that it was just and equitable and in the interest of stockholders generally that Grosse or any other stockholder should be permitted to subscribe for a given amount, regardless of any intent on his part to turn over a part of his allotment to some one not a stockholder. That the company did so decide in this instance was conclusively shown by the attitude adopted by it at the trial. Besides there was no contradiction of the testimony that the company had notice of the bills of sale to plaintiff before it issued the certificates evidencing Grosse's right to receive forty bonds and four hundred shares. The issuance of the certificates, with such notice, was additional evidence of its assent to the subscription for the benefit of Grosse and Bacon jointly. Having expressed its satisfaction with the transaction, it would certainly be precluded from claiming that it had been defrauded, and it does not lie in the appellant's mouth to avoid his obligation by claiming that a fraud was committed against the Union Oil Company. The case differs essentially from those cited, in which the court declined to enforce a contract entered into for the purpose of violating the express policy of the law, or of obtaining something which the party was not equitably entitled to get. There was nothing inherently immoral in the effort of Bacon to secure some of the bonds and stock, or in Grosse's subscribing with the intention of transferring the stock and bonds, when issued, to Bacon. There was no attempt to show that any stockholder of the Union Oil Company had ever complained that he had received a smaller number of shares and bonds than he was entitled to. In the absence of such complaint Grosse was certainly in no position to assert that Hamaker had committed any wrong.

The evidence is entirely inconsistent with the appellant's claim that Hamaker made misrepresentations to him. The terms of the circular were known to him. Hamaker's communications were entirely by letter. The letters made no statement which was not in accord with the offer contained

in the circular. No argument is needed to show that oral testimony offered to show an "intention" on the part of the Union Oil Company to limit its offer in a manner not stated in its circular was properly rejected as incompetent. It was, therefore, not error, to exclude testimony designed to show that Hamaker had concealed from Grosse the fact that the company intended to prohibit the transfer of subscription privileges. If the circular contained such prohibition, the fact was known to Grosse. If it did not, the formal offer to the stockholders could not be restricted by proof of some purpose or design, entertained by the directors of the Union Oil Company, but not expressed to those from whom it was inviting subscriptions.

Nor does the evidence sustain the claim of a failure or want of consideration. In Grosse's letter to Hamaker under date of July 18th the appellant used this language: "I am willing to subscribe for any amount you may name, and as much more additional for myself, providing you will get the bank, or some private individual, to lend me such assistance as I may require from time to time." Upon the clause last quoted, appellant bases the argument that his consent to the proposed transfer of a part of his subscription rights was made conditional upon Hamaker's agreement to provide at any future time for such credit as he might desire. But we think this a strained construction of the letter. In view of the declarations immediately following the portion of the letter above quoted, there is strong ground for saying that any condition which Grosse may have intended to attach to his consent was withdrawn by later statements in the same letter. In any event, the condition must have been intended to apply only to such "assistance" as might be required in making the payment for Grosse's subscription for twenty thousand dollars of bonds and stock of the Producers' Transportation Company. The court found that Grosse did not, at any time prior to November 22, 1909, call upon or request Hamaker to get for him "financial assistance in the matter of loans and money." At that date Grosse had already made his final payment on the stock and bonds subscribed for by him. The finding that he had not requested assistance before November 22d is supported by Hamaker's testimony, and this finding fully meets the claim of a failure of consideration. If no

assistance was needed or requested by Grosse, there is no basis for the position that Hamaker failed to comply with any obligation assumed by him.

In this connection complaint is made of an alleged error occurring during the cross-examination of Hamaker. Appellant was seeking to lay a foundation for impeaching Hamaker's testimony by asking him whether he had not, in giving his deposition, made answers to the effect that Grosse had sought his aid in obtaining loans at a time prior to November, 1909. One of these questions was answered, whereupon the court, upon the suggestion of plaintiff's counsel, said that the entire deposition might go in, and that defendant Grosse would have the benefit of any part of it that tended to impeach Hamaker. This ruling is assigned as error. As a general proposition, the appellant is no doubt correct in his contention that the offer by him of a part of the deposition would not necessarily have authorized the plaintiff to introduce the rest of it. The adverse party would have been limited to the offer of such other parts as related to "the same subject." (Code Civ. Proc., sec. 1854; *Zibbell v. Southern Pacific Co.*, 160 Cal. 237, 250, [116 Pac. 513].) But from the record before us it does not appear that error was committed or that any prejudice resulted from the course pursued in this instance. The contents of the deposition are not incorporated in the statement on motion for new trial. We have no means of knowing whether it contained anything that was inadmissible, under the rule above referred to, or, if inadmissible, injurious. Under these circumstances, the well established rule that error will not be presumed, but must be affirmatively made to appear, prevents favorable consideration of the point urged. (*Dyer v. Leach*, 91 Cal. 191, [25 Am. St. Rep. 171, 27 Pac. 598]; *Kurtz v. Forquer*, 94 Cal. 91, [29 Pac. 413]; *Estate of Angle*, 148 Cal. 102, [82 Pac. 668].)

It is urged that, if Hamaker was not bound to, or did not, secure loans for Grosse, there was no consideration for the latter's undertaking to subscribe on Bacon's behalf. Grosse, it is said, received nothing. But it is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a "prejudice be suffered or agreed to be suffered" by the promisee. (Civ.

Code, sec. 1605.) Certainly the payment by Bacon of twenty thousand dollars, the subscription price of the bonds and stock, was a good consideration for the agreement whereby such bonds and stock were to be transferred to him.

What we have said sufficiently answers most of the claims of the appellant, not already mentioned, with respect to the rulings of the court in the admission and rejection of evidence. Some rulings complained of consisted in sustaining objections to questions asked of Grosse relative to his understanding of the meaning of the letters exchanged between himself and Hamaker. The letters were perfectly plain and evidence to vary their contents was, under elementary rules of law, inadmissible. So, too, evidence designed to show that Grosse was ignorant of the terms upon which the stock and bonds were being offered by the Union Oil Company was incompetent. He had received one of the circulars and this circular clearly expressed the terms upon which subscriptions were invited. In view of what we have said on the subject of consideration, the inquiries attempted to be made on the subject of Grosse's efforts, after payment for and issuance of the stock and the trustee's certificate for bonds, to secure loans through Hamaker had no bearing upon any material matter.

The court made no finding in response to the allegation that the stock and bonds were rapidly increasing in value. Nor was any evidence offered in support of this allegation. It is contended that no equitable relief could properly be granted to plaintiff in the absence of proof that the stock and bonds which he claimed had some peculiar value or that for some reason a judgment for money damages would not afford him adequate relief. If this were simply an action for the conversion of personal property, or for the specific enforcement of a contract to sell personal property, the contention would be unanswerable. Undoubtedly it is the general rule that equity will not compel the delivery of specific personal property wrongfully withheld, nor enforce the specific performance of a contract to sell chattels, unless it is shown that money damages for the breach of the obligation would not afford adequate relief. (*Senter* v. *Davis,* 38 Cal. 450; *Harle* v. *Haggin,* 131 App. Div. 742, [116 N. Y. Supp. 51]; Civ. Code, sec. 3387].) This rule has often been ap-

plied in actions involving corporate stock, the rule declared being that the plaintiff will be denied specific relief in the absence of proof that he would derive some peculiar advantage from the possession of the particular stock which he seeks to retain. (Cook on Corporations, sec. 338; *Eckstein* v. *Downing*, 64 N. H. 248, [10 Am. St. Rep. 404, 9 Atl. 626].)

But this is not a mere action for conversion nor is it one to enforce a contract to sell. In such cases the wrong to be redressed is one cognizable in a court of law, and equity would afford relief only upon a showing that the remedy at law is inadequate. Here, however, the action is, in effect, one to enforce a trust, a kind of action which is within the peculiar province of a court of equity. Under the agreement here alleged and proved, the appellant did not agree to sell to Bacon stock and bonds which he owned. He agreed to subscribe in his name, but on Bacon's behalf, for stock and bonds to be issued. The subscription price was to be paid and was paid by Bacon. When the stock and bonds were issued to the defendant he became a trustee for the plaintiff and in an action by the beneficiary to enforce the trust, the defaulting trustee will not be permitted to say that his beneficiary should be remitted to an action at law. In *Johnson* v. *Brooks*, 93 N. Y. 337, where the plaintiff sued to compel the transfer of stock and bonds which had been bought with plaintiff's money and issued to the defendant, this distinction was clearly made. In sustaining the plaintiff's right to the relief sought, the court used this language: "It is needless, however, to pursue this inquiry further, for the appellant cannot get over the fact that he obtained the shares and bonds under circumstances which prevent him from setting up ownership as against the plaintiff and imposes upon him at least a *quasi* fiduciary relation which he cannot evade without the consent of the real owner." The same rule is declared in *Cowles* v. *Whitman*, 10 Conn. 120, [25 Am. Dec. 60], and *Kimball* v. *Morton*, 5 N. J. Eq. 26, [53 Am. Dec. 661]. Similarly, in *Krohn* v. *Williamson*, 62 Fed. 869, upon facts presenting a like question, Judge Taft, after conceding that courts of equity will not, ordinarily, decree the specific performance of an obligation to transfer personal property, goes on as follows: "But the controlling reason why, in this case, the delivery of the stock *in specie* should be de-

creed, is that the defendants held it in trust for the complainant. The confidential relation, in violation of which defendants seek to retain its possession, gives the complain-. ant the option either to have the stock or its value. The court, as a court of equity, acquires jurisdiction of the action, not because damages at law would be inadequate, but because it is an action to enforce a trust, and, having jurisdiction on this ground, may give such full relief as the nature of the case requires.''

Appellant's demurrer to the complaint was overruled. That the complaint stated a cause of action sufficiently appears from what has been stated, and if, in some particulars, the specifications of uncertainty or ambiguity were well taken, we cannot see that the defendant was in any degree prejudiced by the overruling of the demurrer. The real nature of the cause of action was plainly disclosed and bill of exceptions shows that the case was tried by both the parties with a full understanding of the basis of plaintiff's claims.

The judgment and the order appealed from are affirmed.

Shaw, J., and Angellotti, J., concurred.