[Civ. No. 1904. Third Appellate District.—December 7, 1920.]

## S. W. FLINT, Respondent, v. CARL GIGUIERE, Appellant.

[1] APPEAL—DETERMINATION OF ISSUES—SUPPORT OF JUDGMENT.—On appeal, the appellate court is required to approach the determination of all the issues with the disposition to find, if possible, legal support for the verdict and judgment, and to be content if such support be found.

[2] CONTRACTS — WAIVER OF OPTION — CONSIDERATION — VALIDITY OF AGREEMENT.—The declination of plaintiff to exercise his option to purchase certain specified cattle in order that defendant might have the opportunity of purchasing the cattle for himself constituted a sufficient consideration for defendant's agreement to pay plaintiff a given sum per head for the cattle purchased by defendant, and such a contract is not against public policy; neither is there anything so uncertain or indefinite in its terms as to make it invalid or unenforceable.

[3] ID.—PRESUMPTION OF CONSIDERATION—REBUTTAL — PLEADING AND PROOF.—Plaintiff's option having been in writing, the presumption was that there was a sufficient consideration therefor, and to over-come this presumption, it was incumbent upon defendant to allege and prove the contrary.

[4] ID.—PURCHASE OF CATTLE—STATUTE OF FRAUDS.—Where the agreement of defendant was that he would pay plaintiff one dollar for every head of cattle defendant might buy, but defendant did not bind himself to buy any definite number, such contract was not within the provisions of subdivision 4 of section 1624 of the Civil Code, notwithstanding defendant did buy in excess of two hundred head.

[5] ID. — WAIVER OF RIGHT — RECEIPT OF BENEFITS — STATUTE OF FRAUDS—ESTOPPEL.—Plaintiff having waived and surrendered his right or option to purchase the cattle upon the faith of defendant's promise to pay him one dollar per head, and defendant having received the benefit of that agreement by having been permitted to purchase said cattle, the latter is estopped from urging the invalidity of the agreement under the statute of frauds.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Elmer W. Armfield and Arthur B. Eddy for Appellant.

Arthur C. Huston for Respondent.

BURNETT, J.—The complaint in this action is brief and may be set out in full as follows:

"1. That within two years last past the said plaintiff and D. B. Woods entered into a contract whereby the said D. B. Woods agreed to sell and deliver to the said plaintiff three hundred and sixty-five (365) head of cattle situated in Berryessa Valley, California.

"2. That said plaintiff and defendant agreed that if plaintiff would permit said defendant to purchase said cattle so held under contract by plaintiff, from the said Woods, that the said defendant would pay plaintiff the sum of one dollar ($1.00) per head for each and every head purchased by him; that in consideration of said agreement on the part of said defendant to so pay him the sum of one dollar per head, the said plaintiff agreed that said Woods might sell said cattle to the said defendant, notwithstanding the contract between plaintiff and the said Woods.

"3. That the said defendant thereupon purchased from the said Woods 365 head of said cattle.

"4. That there is due, owing, and unpaid from the said defendant to the plaintiff the sum of three hundred and sixty-five ($365) dollars; that the same has not been paid and no part thereof has been paid."

In the answer it was denied, on information and belief, that plaintiff and Woods entered into such contract, and it was denied positively that plaintiff and defendant entered into the contract mentioned in the complaint. An affirmative defense of fraud, based upon misrepresentation by plaintiff of the fitness of said cattle, was also set up, and it was alleged that the agreement was that defendant should pay plaintiff the sum of one dollar per head "for each and every head of the said cattle fairly fat, fit, and suitable for slaughtering purposes which he might purchase from the said Woods"; that immediately after entering into said contract defendant discovered that said cattle were extremely thin, lean, and scrawny and entirely unfit and unsuitable for slaughtering purposes, and informed plaintiff that he would not purchase the same or any thereof.

The action was tried before a jury and a verdict rendered in favor of plaintiff for the sum of $328 and the appeal is from the judgment entered thereon.

[1] At the outset, we may dispose of the question of fraud by saying that as to it the evidence is conflicting, and it may not be amiss, indeed, to recall the principle that requires us to approach the determination of all the issues with the disposition to find, if possible, legal support for the verdict and judgment, and to be content if such support be found.

The theory of plaintiff, as we understand it, is that he had an option for the purchase of certain cattle from one Woods; that he agreed with defendant that he would not exercise said option if the defendant would pay him one dollar per head for all of said cattle that the defendant might purchase; that thereafter said defendant did purchase 328 thereof, and, hence, plaintiff became entitled to the payment of $328.

Abstractly considered, such agreement does not appear to be legally objectionable. [2] There is nothing to indicate that it is against public policy, and the declination of the plaintiff to exercise his option in order that the defendant might have the opportunity of purchasing the cattle for himself would constitute a sufficient consideration for the latter's promise to pay the former the said sum of money. Nor is there anything so uncertain or indefinite in its terms as to make such contract invalid or unenforceable.

But we do not understand appellant to claim that an agreement of that kind may not be enforced, but his contention is that no such contract was either pleaded in the complaint or shown by the evidence.

As to the complaint it is true that it is not expressly alleged that plaintiff agreed "to stand aside" or not to exercise his option, but that is necessarily implied in the averment "that said plaintiff agreed that said Woods might sell said cattle to the said defendant, notwithstanding the contract between plaintiff and said Woods." The inference is also strengthened by a consideration of the use of the expression, "permit said defendant to purchase said cattle." In brief, the complaint shows the agreement to be that defendant would pay plaintiff one dollar per head for each of the cattle purchased by him and in consideration of this

promise the plaintiff agreed that Woods might sell said cattle to defendant, notwithstanding said option. If that is not equivalent to a promise on the part of plaintiff not to exercise his legal right to purchase said cattle, then the promise amounts to nothing. Of course, he could not *permit* defendant to buy the cattle or carry out his agreement that "Woods might sell said cattle to said defendant," if he exercised his option. Both conditions could not coexist. It hardly seems controvertible that plaintiff has substantially set forth in his complaint a contract in accordance with the theory for which he contends in his brief.

We may next consider whether the evidence furnishes any rational ground for the inference that such was the contract of the parties. In reference to it the plaintiff testified as follows: "Mr. Giguiere came to my house; Mrs. Flint and I were there. Mr. Giguiere wanted to get those cattle. He says, 'I hear that you got Woods' cattle tied up'—that's the expression he used. I says, 'I have a contract on his cattle and I am going to try to sell them'; and he says, 'Will you turn those cattle over to me?' I says, 'I would be glad to, Carl; we live here in Yolo County and I've done some business with you before—I would be glad to do it—turn them over to you, providing you pay me what I would make, otherwise, a dollar a head is my commission.' He says, 'All right, I'll pay you a dollar a head.' And then Mrs. Flint took the original contract— Q. When you say the original contract, you mean the one of February 22d? A. Yes, sir; all those, all of them, and gave Mr. Giguiere a copy. Mrs. Flint wrote this copy out and handed it to Mr. Giguiere, and Mr. Giguiere took it and said he would go ahead and finish the business up with Mr. Woods." Is it not a reasonable inference from the foregoing that the intention of the parties was that plaintiff would make no attempt to buy the cattle,—in other words, to consummate his option, and in consideration of this waiver, the defendant would pay him one dollar for every head that he might buy? The agreement was not formulated with the accuracy that would be expected of attorneys, but these men are laymen, and extreme precision, especially in the use of legal terms, may not be looked for. But here again, we may say that the language quoted can hardly bear any other construction than as claimed by respondent.

In the cross-examination he added that defendant said, "All right, now, if I buy these cattle, Sam, I'll give you one dollar a head." But it is not contended by respondent that appellant was to pay unless he purchased the cattle. So that the foregoing expression is not inconsistent with plaintiff's theory. Indeed, as we have seen, the complaint makes the purchase by defendant a condition of his obligation to pay plaintiff.

We are not concerned, of course, with the fact that defendant testified that the agreement was that he was to pay one dollar a head for all the *fat* cattle he bought. But it is worthy of remark that his testimony on the other point is to the effect that plaintiff was to give up his option in consideration of said promise of defendant.

As to the execution of said agreement, it is sufficient to say that it is not disputed that plaintiff did "step aside" and permit defendant to purchase the cattle, and there is evidence which the jury had the right to believe—if indeed it is really contradicted—that defendant did purchase 328 head of said cattle. Thus were the conditions fulfilled for the creation of the obligation of defendant to pay said sum.

Now, for a more specific consideration of defendant's criticisms of the judgment. The first is, that there was no consideration for the promise to pay said money to plaintiff. This is based upon the assumption that plaintiff did not confer any benefit or suffer any detriment, for the reason that his so-called option was without consideration. As to this, it is probably sufficient to say that the defendant presented no such defense in his answer. The option was embodied in a written instrument, and in such cases the burden of showing a want of consideration sufficient to support it lies with the party seeking to invalidate it. (Civ. Code, sec. 1615.)

[3] The instrument being in writing, the presumption is that there was a sufficient consideration (sec. 1614, Civ. Code), and to overcome this presumption it was incumbent upon appellant to allege and prove the contrary. (*Yellow Jacket etc. Co.* v. *Holbrook,* 24 Cal. App. 687, [142 Pac. 128]; *Pastene* v. *Pardini,* 135 Cal. 431, [67 Pac. 681].)

Nor do we see anything in the form or terms of said option to render it invalid. If conferred upon plaintiff the legal right to purchase within a certain time said cattle at a certain

price. Manifestly, plaintiff was not required to promise
to purchase the cattle in order to make it an enforceable
instrument. If he had so promised, it would, of course,
have made the instrument a contract of sale instead of an
option. From the nature of this instrument it would follow
that a valuable consideration having presumably been paid ·
therefor, the "option" was binding upon Woods and con-
stituted property which was capable of ownership and of
being transferred. But whether Woods could have with-
drawn the privilege granted therein before it was acted
upon, is indeed immaterial since there is no doubt that
it was operative at the time of said agreement between
plaintiff and defendant. This privilege or option being a
property right, necessarily it would be a sufficient consid-
eration to support an obligation. It is immaterial what its
value was, although plaintiff and defendant placed its value
at one dollar per head. At any rate, we must presume it
was of value, and therefore the assignment of it—or what
in effect is the same thing as far as the consideration is
concerned—the voluntary declination of plaintiff to exer-
cise said option, imposed upon him a burden and upon de-
fendant a benefit; and hence there were reciprocal prom-
ises and obligations that constituted a valid contract between
plaintiff and defendant. (*Bacon* v. *Grosse,* 165 Cal. 481,
[132 Pac. 1027] ; Civ. Code, sec. 1605.)

It is also contended by appellant that the contract between
Woods and Flint constituted a chose in action, and there-
fore the attempted transfer of it by oral agreement was in-
valid by virtue of subdivision 4 of section 1624 of the Civil
Code, pronouncing invalid "an agreement for the sale of
goods, chattels, or things in action, at a price not less than
two hundred dollars, unless the buyer accepts or receives
part of such goods and chattels or the evidences, or some
of them, of such things in action, or pays at the time some
part of the purchase money."

But the answer is that the agreement between plaintiff
and defendant was not for the sale of said "chose in action"
but that plaintiff would not avail himself of said privilege.
There was no claim nor was there any evidence that defend-
ant was to buy the cattle under the agreement between
plaintiff and Woods, as would have been the case if there
had been a sale of the "chose in action." By reason of

plaintiff abandoning his right to purchase, defendant was left at liberty to make whatever terms he could with Woods.

[4] Moreover, if the transaction might be regarded as a sale, the statute would not apply, for the reason that the promise of defendant was not to pay a definite amount of two hundred dollars or more, but he was to pay one dollar for every head which he might buy. He did not bind himself to buy any definite number. In fact, this seems to have been left to his judgment. It might therefore have been less than two hundred. To such a contract the statute does not apply.

[5] But be that as it may, under the circumstances of the case, as we are required to view it, appellant is estopped from urging the statute of frauds. Flint performed his part of the agreement. He surrendered his property right upon the faith of Giguiere's promise to pay one dollar per head. Having received the benefit of that agreement with Flint, it would be unjust and inequitable for defendant to repudiate it upon the ground that the contract was not in writing. Many refinements and much learning on the subject are displayed in the books and the decisions, but we think it can be safely said that in cases like this where one of the parties has performed his obligation, has suffered the detriment contemplated by the agreement, and the other party has fully received the benefit of the transaction, the chancellor has a large discretion in determining whether it would be inequitable to allow the party who gains by the contract to take refuge under the statute of frauds, and unless it can be said that such discretion has been abused, an appellate court will not interfere. The question, we may say, arose upon an objection to the testimony of plaintiff as to the contract with defendant, and we think it cannot be held that the trial court erred in the ruling.

As illustrative of the application of this principle we may refer to the two California decisions cited by respondent.

In *Pearsall* v. *Henry*, 153 Cal. 314, [95 Pac. 154, 159], the action was for the specific performance of an oral contract to convey real property and the supreme court, in holding that there was a sufficient performance by one party to require an execution of the contract by the other, made this statement: "Where there is a verbal agreement under which each of the parties is to convey land to the other, it

is generally held that a conveyance by one on the faith of the agreement constitutes such part performance as will in equity take the case out of the operation of the statute (citing cases). The case at bar is within the principle of these decisions and the conveyance by plaintiffs, therefore, put them in a position to compel compliance by the defendants with the undertakings on their part."

In *Hefferman* v. *Davis,* 24 Cal. App. 295, [140 Pac. 716], the action was for the recovery of rent, and the lessee defended upon the ground that the lease was invalid because not in writing. It was held that he was estopped from setting up the statute of frauds, this court holding that it would be inequitable to allow him to repudiate the contract on any such ground.

Some contention is made that appellant did not buy the cattle under said contract with respondent, but that it was a subsequent transaction in which he was jointly interested with his partner, Holmes. But if we concede merit in such defense, there is sufficient evidence to the contrary to sustain respondent's position. As to this it will answer to quote the following from the testimony of plaintiff: "Q. After that did you ever have any talk with Mr. Giguiere in regard to whether he had actually taken the cattle from Woods? A. Yes, sir, I was out in Mr. Giguiere's machine and sold him, if I remember right, a couple of head of cattle that I bought out here from Tom Chalmers, and, Giguiere says, 'Well, I made the trade and I'll give you a check.' I says, 'All right,' and I says, 'Any time.' "

Another point is made that the purchase of the cattle was subsequent to the expiration of the option and therefore not within the terms of the contract between plaintiff and defendant. Respondent claims that there is a conflict in the evidence as to this, but, granting that appellant is right as to the time, it does not seem to be material. The agreement between plaintiff and defendant did not require the purchase to take place before the expiration of the option. Indeed, as to that, no time was specified, although probably a reasonable time was implied. The sale, at any rate, took place only a few days after said option expired, and plaintiff, having performed his part of the agreement, was entitled to recover.

In conclusion, we may state that in none of the cases cited by appellant do we find anything militating against this view. We may briefly notice the last of these, *Thomas* v. *Birch,* 178 Cal. 483, [173 Pac. 1102].

That case involved an option, and the court held that it was not binding upon either party until the defendant exercised his option by making the payment within the time limited, but it was found that the option was without consideration and therefore constituted a mere offer which required acceptance before it became a contract. Herein, however, there was a consideration for the option, and we are justified in holding that it was accepted by Flint and therefore became a property right of value.

The case involves a comparatively trivial amount, but we have given it as careful consideration as though much were at stake and we have reached the conclusion that, under familiar principles, we should not disturb the result reached.

The judgment is affirmed.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 6, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 3, 1921.

All the Justices concurred.