[Civ. No. 4127. Third Appellate District.—June 25, 1930.]

T. N. FIERCE, Respondent, v. WILLIAM G. REED, Appellant.

Homer C. Mills for Appellant.

Fall & Fall, Lucius Fall and J. Gilbert Fall for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant for the sum of $1077.66, balance alleged to be due for and on account of certain work performed by the plaintiff pursuant to contracts hereinafter referred to. From this judgment the defendant appeals.

The record shows that both the plaintiff and defendant were building contractors, and that the defendant had a contract for the erection of a certain school building; that on or about the twenty-third day of January, 1925, Deatherage & Lyon, manufacturers' agents, submitted to the defendant Reed a proposal to perform certain work and furnish certain materials in the construction of the school building for which the defendant Reed had a contract. This proposal, so far as necessary to be considered herein, reads as follows: "This proposal includes necessary slate blackboard for the net price of Four Thousand Dollars ($4000.00). If two toilet rooms on second floor are changed to classrooms, Alt. bid No. 2 add this footage to above figure at seventy-nine (79c) cents per sq. ft. installed. If 4-room wing is omitted, Alt. bid No. 4, deduct from above figure Two Hundred and Ninety-two Dollars and eighty cents ($292.80). Includes—Necessary cork carpet for the net price of Three Dollars and twenty-five cents ($3.25) per square yard, installed." This proposal was signed by Deatherage & Lyon, by M. S. Lyon, and was accepted by the defendant Reed on the fourth day of March, 1925. Thereafter, and on the seventeenth or eighteenth day of March, 1925 (the heading of the instrument is dated March 18, 1925; the date on which this agreement appears to have been accepted bears date of the seventeenth day of March, 1925), two agreements were entered into between the plaintiff and defendant relative to the work included

in the Deatherage & Lyon's proposal. The first instrument bearing the two dates of March 17th and 18th, so far as necessary to be considered herein, reads as follows: "In accordance with your order given to Deatherage & Lyon, accepted by you March 3, 1925, we propose to furnish and erect complete all the 3' 0" and 4' 0" slate blackboards in the Frances E. Willard School which you are erecting in Long Beach, for the total sum of $4000.00. If the two toilet rooms on the second floor are changed to class rooms, add the footage of slate required to above price at 79c per square foot. If the four room addition is omitted as provided in alteration No. 4 deduct from the total $292.80. You are to prepare all wood trim in place, leaving us exactly where the 3 ft. boards are to go 3' 0¼" and where the 4 ft. boards are to go, leaving us exactly 4' 0¼" from where the slate sets on the chalk trough to the underside of the capstrip. Note: This is very necessary to enable us to tilt the slate and bring the joints together in a proper manner. Should this clause not be complied with then it is understood and agreed that there will be an additional charge of $25.00, as it will necessitate cutting off the slate." This agreement bears the signature of both the plaintiff and the defendant. The second agreement entered into between the plaintiff and the defendant, bearing date of the seventeenth day of March, 1925, reads, so far as material here, as follows: "We propose to furnish and install all necessary buff cork to make boards in the Frances E. Willard School you are now building at Long Beach at a price of $3.25 per square yard, measurements to be taken when the cork is installed." It is provided in this contract that payment is to be made within thirty days after the completion of the work, and bears the signature of both the plaintiff and the defendant.

This controversy arises by reason of the fact that the proposal submitted by Deatherage & Lyon included the following clause: "Includes necessary cork carpet for the net price of $3.25 per square yard, installed"; while the main agreement, and the one set out in the plaintiff's complaint, and executed between the plaintiff and the defendant did not include this work, but was set forth and provided for in a special contract, which is the third contract which we have above set forth providing for the installation

of buff cork to make boards for the Frances E. Willard School, at the price of $3.25 per square yard, etc.

The answer of the defendant in this action tendered the issue that the contracts executed between the plaintiff and defendant were executed through mutual mistake, and that the contract should have been so executed as to provide that the sum of $4,000 mentioned in the main contract should cover payment for the cork carpet. The record shows that the cork carpet cost, installed, $865.65, and that for some extra "Mission" slateboards the further sum of $12 was charged, making a total of $877.65, being the sum contested in this action. Upon the trial of the action, however, practically no testimony was introduced to show any mutual mistake.

The record sets forth that the firm of Deatherage & Lyon was engaged in making proposals for work; that while they made proposals for work in behalf of contractors, and made proposals for this work in behalf of the plaintiff, yet the plaintiff tendered his own contracts and did not enter into a contract with the defendant to do the work as proposed by Deatherage & Lyon, though the beginning of the contract does refer to the proposal. There is testimony in the record to the effect that the plaintiff presented the two contracts which were executed by the plaintiff and defendant, to the defendant for his signature, and explained that the second contract, or the contract relating to the cork carpet, entered into between the plaintiff and defendant, was necessary to do away with any misunderstanding as to the price for which the work was to be done; that the main contract, the one for slate-work, did not include the work of supplying and installing cork carpets. These contracts, after this explanation, as testified to by the plaintiff, were signed by the defendant, and became the contracts under which the work was performed. The defendant gives a different version of this conversation, and testifies that the two contracts were presented to him by the plaintiff, with the explanation that the change was made so as to make some alteration in the payment for the work, or to enable the plaintiff to obtain pay from the authorities having charge of the erection of the school building. The defendant also testified that the contracts were presented to him by his bookkeeper, and that he himself did not read the contracts in

their entirety. Upon this appeal the question of mutual mistake is not urged, and as there is really nothing in the record to sustain such a defense, no further consideration need be given thereto.

While the appellant raises the question that the findings of the court are not sustained by the testimony, there is a complete failure to point out any particulars in which the testimony is so deficient. There is some conflict between the testimony of the plaintiff and the testimony of the defendant, and if the testimony of the plaintiff, and the fact of the two contracts being signed by the defendant, satisfied the trial court that the plaintiff's version was correct, the finding of the court is abundantly supported by the testimony. ■ Upon this appeal the appellant urges that there was no consideration for the execution of the last contract which we have set forth in this opinion. This, of course, places upon the defendant and appellant the burden of establishing the same, as by section 1614 of the Civil Code a written instrument is affirmative evidence of a consideration. An examination of the record, and of the answer filed by the defendant, and a reading of the testimony taken upon the trial of the action discloses that the defendant did not, either by his pleadings or testimony introduced at the trial of the action, tender the issue of want of consideration. In 6 Cal. Jur., p. 209, sec. 138, the rule of law is thus stated: "The defense of want of consideration for the execution of a written instrument is new matter which must be specially pleaded, and it seems to be the rule that a general averment that the contract sued on was executed without any consideration whatever is but an allegation of. a conclusion of law." The following cases show that want of consideration must be specially pleaded, and that the party pleading want of consideration must support his pleading by testimony: *Pastene* v. *Pardini,* 135 Cal. 432 [67 Pac. 681, 684]; *Winters* v. *Rush,* 34 Cal. 136; *Flint* v. *Giguiere,* 50 Cal. App. 314 [195 Pac. 85]; *Yellow Jacket Co.* v. *Holbrook,* 24 Cal. App. 687 [142 Pac. 128]. We may also add the case of *Imperial Valley Land Co.* v. *Globe Grain & Milling Co.,* 187 Cal. 352 [202 Pac. 129], where it is held that a question not raised in the lower court cannot be determined on appeal.

Not having, by his pleadings or his testimony, tendered to the trial court any question as to want of consideration

for the execution of the two contracts, we do not very well perceive any grounds upon which the judgment of the trial court can be reversed. The two contracts are not a variance of the proposals made by Deatherage & Lyon. It does not appear that Deatherage & Lyon had any authority to bind the plaintiff by a contract, although they were engaged in making proposals for work leading up to the execution of contracts. But whatever the proposal may have been, the two contracts entered into by the plaintiff and the defendant appear to have been entered into without any element which would tend either to vitiate or change the terms thereof. The balance due for the work performed is not questioned if the defendant is found to be liable.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.