[No. 11581.  In Bank. — July 13, 1887.]

ELIZABETH A. GLASCOCK, ADMINISTRATRIX OF THE ESTATE OF GEORGE GLASCOCK, DECEASED, APPELLANT, v. CENTRAL PACIFIC RAILROAD COMPANY, RESPONDENT.

NEGLIGENCE — RAILROAD — CROSSING TRACK WITHOUT LOOKING FOR TRAIN. — A person of mature age, in the full possession of his faculties, while driving along a public road as appears a railroad crossing, from which road a clear and unobstructed view of the railroad track could be had for a considerable distance, is guilty of contributory negligence in driving over the crossing without first looking for the approach of coming trains; and if in attempting to cross the track under such circumstances he is killed by a passing train, the railroad company is not liable, notwithstanding the engineer of the train omitted to ring his bell or blow his whistle as the train approached the crossing.

ID. — QUESTION OF CONTRIBUTORY NEGLIGENCE WHEN FOR THE COURT. —
In an action to recover damages for personal injuries alleged to have been
caused by the defendant, the question of contributory negligence is one
of law for the court, when the evidence of the plaintiff indisputably
shows that the person injured failed to exercise such care as men of pru-
dence usually exercise in positions of like exposure and danger.

APPEAL from a judgment of the Superior Court of
Yolo County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Jackson Hatch, J. C. Ball,* and *F. E. Baker,* for Appel-
lant.

*S. C. Denson,* for Respondent.

PATERSON, J. — Plaintiff is the widow of George
Glascock, who was killed by defendant's cars at a rail-
road crossing near Black's Station on the morning of
November 1, 1884. The cause came on for trial before
a jury, and after the plaintiff had rested her case, a mo-
tion for a nonsuit was made and granted.

Counsel for appellant, in the following epitome, give a
very fair statement of the facts: —

"Black's Station is a village about ten miles north-
west from Woodland, in Yolo County. A public road
about sixty feet wide leads from Black's in a southerly
direction for about a quarter of a mile; thence easterly
about one mile, crossing defendant's railroad track about
a quarter of a mile east from the point where the road
turns east. After leading east for about a mile, as above
stated, the road turns south, and goes due south and past
the residence of deceased. The crossing where the col-
lision occurred was on this road about fifteen hundred
feet north of the house. A person passing down the
highway in question to the crossing would have a clear
view of the railroad track to his right nearly all the time.
There are no obstructions that would prevent him seeing
the track or an approaching train. There are two whis-

tling-posts north of the crossing on the railroad track; one 1,370 feet distant, and beyond a crossing on another road; the other 588 feet distant.

"A wind was blowing at the time from the north.

"The train that collided with the wagon of deceased that day was a special freight train from the north going south, no notice of its coming having been received by the company's agent at Black's. It passed the station about ten o'clock A. M. Just before the collision it was running at the rate of probably ten miles an hour.

"The regular freight train going north on that day was due at Black's about 11:30 o'clock A. M., and the regular passenger train going north that day was due at Black's at 1:03 P. M.

"In fact, a train did pass the crossing going north about one half hour after the collision.

"It is fair to conclude that the collision actually occurred between ten and eleven A. M. that day.

"Deceased was a thrifty, prudent, cautious, strictly temperate, and unusually active man; a man of strong individuality, self-reliant, and had lived on a farm owned by him, through which defendant's railroad track passed, since 1853, and was familiar with the crossing where the collision occurred. He was a good horseman also. He had been especially cautious in approaching and passing over this crossing.

"Before the colliding train reached the crossing, no signal of its approach was given by the sounding of a whistle or the ringing of a bell.

"No witness saw deceased after he had started homeward from Black's, nor was he seen by any one at the time of the collision. There is no evidence whatever of the manner in which the collision occurred, nor of the manner in which the deceased approached the railroad track, nor of any of the circumstances immediately preceding or concurrent, in point of time, with the collision.

"It is shown by the pleadings that deceased, at the time of the collision or immediately prior thereto, was driving two horses harnessed to a wagon along and upon the public highway referred to, and was in the act of crossing defendant's railroad track at the crossing."

None of the witnesses could say whether the train began to "slow down" before it reached the crossing.

Several of the witnesses testified that they were on the road in view of the crossing, but farther from the crossing than the deceased, and that they heard the whistle when the train was at Black's, and again at a crossing south of Black's; that the country was level, and the track graded slightly above the general surface of the ground; that the train made a great noise, which was carried southward by the wind.

The angle made by the railroad and the highway is one of about thirty-five degrees. The evidence showed that the engineers had been in the habit of passing the crossing where the accident occurred without giving the signals required by the statute, and that the deceased was aware of the fact.

We think there can be but one reasonable conclusion drawn from the facts. Mr. Glascock either saw the train before he reached the track, or he did not look towards the track as he approached it. According to the testimony of his son, he was in full possession of his mental and physical powers; "and when at the crossing, and a little ways from it," as his brother testified, "could see up and down the track at least a couple of hundred yards from the crossing, — it was always an open, plain view." Having good eyes, it was his duty to use them, at least to some extent, for his own protection, and his failure to do so would be contributory negligence, and prevent a recovery, notwithstanding the negligence of the defendant in failing to ring the locomotive bell or blow the whistle. It is an irresistible inference, from the facts developed from the testimony

of the plaintiff, that if Mr. Glascock had at any time
looked up the track after the train reached the point
where the engineer ought to have rung the bell he could
and would have seen the train coming in time to stop
and let it pass.    There was no dust, — nothing to ob-
struct the view.   The case is not one, therefore, where we
are called upon to say how much investigation, listening,
or looking by the deceased would overcome the charge of
contributory negligence, as where a curve in the road,
tunnel, embankment, trees, buildings, or dust obscures
the view; but it is a case where the deceased could have
seen and heard if he had exercised his faculties therefor
to any extent whatever.   If he looked, he saw; and having
age and faculties to understand the dangers, is charged
with a knowledge of them, and was bound to act upon that
knowledge as a prudent and cautious man would under
the circumstances.    His failure to so act was negligence
which, notwithstanding the negligence of the defendant,
the law regards as such a contributory cause on his part
as will make the injury his own misfortune, and relieve
the other party from liability therefor.   (*Flemming* v.
*Western Pacific R. R. Co.*, 49 Cal. 257; *McQuilken* v. *Cen-
tral Pacific R. R. Co.*, 64 Cal. 466; *Clark* v. *Missouri R. R.
Co.*, 35 Kan. 350; *Union Pacific R. R. Co.* v. *Adams*, 33
Kan. 427; *Schofield* v. *C. M. & S. R. R. Co.*, 114 U. S. 615.)

While the question of negligence. is nearly always a
matter for the jury, and the burden of proving contribu-
tory negligence rests upon the defendant, yet when it
appears from the undisputed facts — shown  by  the
plaintiff's own evidence — that the deceased has not
exercised such care as men of prudence usually exercise
in positions of like exposure and danger, the question is
one of law for the court.   (*Fernandes* v. *Sacramento R. R.
Co.*, 52 Cal. 50; *Flemming* v. *Western Pacific R. R. Co.*, 49
Cal. 257.)

In the case at bar, we think the facts shown by the
plaintiff would not support a verdict in her favor, and

that the court below properly granted the motion for nonsuit.

There was no error in sustaining the objections to the questions propounded to the witness Glascock. The questions called for the conclusion or opinion of the witness. If admissible at all, the inquiry should have been confined to matters of fact, — to a relation of the circumstances. In passing upon the motion for nonsuit, the *court below was* bound to presume that the defendant was ordinarily a cautious and prudent man. But neither this presumption nor the fact, if shown, that he had on every other occasion been careful in crossing the railroad, could. avail the plaintiff in view of the other facts in the case. (*Sanderson* v. *Frazier*, 8 Col. 79.)

Judgment and order affirmed.

SEARLS, C. J., THORNTON, J., and McFARLAND, J., concurred.

Rehearing denied.