[L. A. No. 23492. In Bank. Oct. 7, 1955.]

DOROTHY BUCKLEY et al., Appellants, v. FRED D. CHADWICK, Respondent.

184

Russell H. Pray, Block & Dunbar, Samuel P. Block and Eric A. Rose for Appellants.

Parker, Stanbury, Reese & McGee and William C. Wetherbee for Respondent.

SCHAUER, J.—In this wrongful death action plaintiffs, the surviving widow and minor son of Allen Buckley, deceased, appeal from an adverse judgment entered upon a jury verdict. During the trial the widow waived in favor of the son her rights to the proceeds of any recovery. We have concluded that plaintiffs' various contentions furnish insufficient grounds for reversal, and that the judgment should be affirmed.

The record on appeal consists of a clerk's transcript and a settled statement, prepared by plaintiffs, of oral proceedings at the trial. (See rule 7, Rules on Appeal, 36 Cal.2d 8.) The statement comprises in part a narration of numerous facts

and in part verbatim extracts "from a partial reporter's transcript of oral proceedings." From such statement it appears that the decedent, Allen Buckley, was in the business of contracting for the furnishing of dirt and other materials on construction jobs. He owned two dump trucks and rented at various times cranes and other equipment necessary in his business. On March 16, 1951, he and one McDonald entered into a partnership with each other to furnish certain dirt on a construction site for a third party and agreed to equal division of the profits. On the same day the two partners rented from defendant, also in the contracting business, a drag line crane, without an operator and on a "bare rental basis." The lease contract, which was oral, "provided that said partnership provide an experienced oiler in the operation of the crane and also that Mr. McDonald would operate it." Defendant stated at that time that the crane was in first class condition and had been worked on since it came off the last job. McDonald transported the crane to a dirt pit where the partnership used it for the loading of dump trucks.

On April 19, 1951, while McDonald was operating the crane to deposit dirt in a dump truck, the boom cable of the crane broke and the boom fell, striking and killing Buckley, who was standing on the running board of the truck. The one-half inch boom cable broke inside the cab of the drag line crane at a place on the cable that was rolled on, around, and off the drum as the boom was raised and lowered in operation.

The evidence conflicts sharply concerning what caused the cable to break. The settled statement recites that "At the time of the accident said crane was being operated and maintained by said partnership through Mr. McDonald and said oiler" provided by the partnership. There was expert testimony that at the point of break the cable had been worn and defective for some time and was "worn out a long time ago," and that such condition could not have developed during the period the partnership had used the crane. Conflicting evidence was that defendant Chadwick and his mechanic had inspected the cable closely before renting it out to the partnership and that it was then in good condition. McDonald testified that it was the oiler's duty to "oil the machine" but it was not his duty to inspect the cable and that if a strand of the cable "is broken in view, either I or the oiler would have caught it," while defendant's expert witnesses stated that the oiler should have inspected the cable every

day and oiled it at intervals, and, further, that "the ends of the broken cable . . . where the break occurred showed abrasive damage resulting from faulty winding and unwinding" of the cable and that "if McDonald and the oiler had allowed the cable to cross-wind or overlap on the drum during the six days they were using the crane, enough damage could have been done in one second of use under strain to have caused the cable to break."

Plaintiffs' complaint is framed in two counts, one for an alleged breach of warranty and the other for alleged negligence of defendant crane owner. Defendant answered with a general denial, and also pleaded contributory negligence of the deceased, and unavoidable accident. As grounds requiring reversal of the judgment in defendant's favor plaintiffs urge error in jury instructions, and also that the court erroneously prevented the exercise of peremptory challenges by plaintiffs in the selection of the jury.

The court instructed the jury that negligence on the part of the deceased Buckley or of his agent which proximately contributed to the death would bar recovery against defendant, that the evidence established that the crane was being operated and maintained by agents of the deceased, that McDonald was such an agent, that if the jury found "that there was any negligence on the part of one or both of Buckley's agents, McDonald and the oiler, which contributed in any degree as a proximate cause of the accident," then plaintiffs could not recover, and that the "reason for the rule is that the negligence of an agent within the course and scope of his employment is imputed to his principal."

█ In reliance upon *Campagna* v. *Market St. Ry. Co.* (1944), 24 Cal.2d 304, 307 [149 P.2d 281] (see also *Bennett* v. *Chanslor & Lyon Co.* (1928), 204 Cal. 101, 105 [266 P. 803], *Bencich* v. *Market St. Ry. Co.* (1937), 20 Cal.App.2d 518, 526 [67 P.2d 398]), plaintiffs first contend that the instructions as to imputed negligence were erroneous because such defense was not pleaded in defendant's answer and therefore was not in issue. Plaintiffs first raised the point, however, on their motion for new trial, and the case was tried throughout upon the theory that the pleading was sufficient in this respect. Further, the record on appeal discloses no objection by plaintiffs to evidence relating to negligence of agents of the deceased. Under such circumstances, plaintiffs will be deemed to have waived the alleged pleading defect. (See *Miller* v. *Peters* (1951), 37 Cal.2d 89, 93 [230 P.2d 803]; *Vaughn* v.

*Jonas* (1948), 31 Cal.2d 586, 605 [191 P.2d 432]; *Hinkle* v. *Southern Pac. Co.* (1939), 12 Cal.2d 691, 701 [87 P.2d 349]; *Swink* v. *Gardena Club* (1944), 65 Cal.App.2d 674, 680-681 [151 P.2d 313]; *Simpson* v. *Bergmann* (1932), 125 Cal.App. 1, 5-6 [13 P.2d 531]; *Resetar* v. *Leonardi* (1923), 61 Cal.App. 765, 767 [216 P. 71].)

 Plaintiffs also urge that there was no evidence that the oiler was an agent, servant or employe of the partnership or of the deceased. In addition to the rental contract provision that the partnership furnish an experienced oiler in the operation of the crane, the settled statement prepared by plaintiffs recites as indicated above that "At the time of the accident said crane was being operated and maintained by said partnership through Mr. McDonald and said oiler." McDonald, as a witness for plaintiff, testified, "Q. Did you have someone else working there? A. I had an oiler. Q. And was he on the job as long as you were on the job? A. Yes." Also, the trial judge in his memorandum opinion upon denying plaintiffs' motion for a new trial (which opinion is included in the settled statement) wrote that "the case was tried and argued upon the assumption that such agency existed," and that counsel for plaintiffs, when requested on oral argument to indicate "evidence pointing to any inference other than the agency of the oiler . . . could point to none." Plaintiffs do not claim such statements of the trial judge are incorrect, and on appeal have failed to point out or provide a record of any evidence which would support a finding that the oiler was other than an employe or agent of the partnership. Their contention on this point thus provides no ground for reversal. (See *Brokaw* v. *Black-Foxe Military Institute* (1951), 37 Cal.2d 274, 280 [231 P.2d 816]; *Philbrook* v. *Randall* (1924), 195 Cal. 95, 104 [231 P. 739]; *Bacon* v. *Grosse* (1913), 165 Cal. 481, 490 [132 P. 1027]; *Cutting Fruit Packing Co.* v. *Canty* (1904), 141 Cal. 692, 695-696 [75 P. 564]; 4 Cal.Jur.2d 426, § 559, and cases there cited.) The quoted statements and testimony also establish that any negligence by McDonald or the oiler in operation of the crane was in the scope of their employment on behalf of the partnership; thus no error is shown in not submitting to the jury the issue of scope of employment.

Plaintiffs next urge that any negligence of an agent of the deceased is not imputable to an heir in a wrongful death action. The court, however, instructed the jury that if

negligence on the part of the deceased or of his agent proximately contributed to the death, then recovery was barred.

█ Very recently, after first pointing out the general principle that ''The relationship of joint venturers is that of a mutual agency, akin to a limited partnership,'' we held that ''the negligence of one joint venturer or of his employes acting in connection with the joint venture is imputed to the other joint venturers.'' (*Leming* v. *Oilfields Trucking Co.* (1955), 44 Cal.2d 343, 350 [282 P.2d 23].) █ Applying the same rule here, it follows that any negligence of the partner McDonald or the oiler, an agent of the partnership, would be imputed to Buckley.

Plaintiffs also contend, in reliance upon a challenging article appearing in 42 California Law Review 310, authored by the learned Judge Paul Nourse of the Los Angeles Superior Court, that in any event contributory negligence (whether of the deceased, or imputed to him) is not a defense in a wrongful death action. Meeting the challenge, defendant urges, is the opinion of the equally learned trial judge delivered upon denying plaintiffs' motion for a new trial in this case, holding that the law is definitely settled to the contrary. Since the origin, development and acceptance of the rule recognizing contributory negligence of the decedent as a defense in wrongful death actions has not heretofore been extensively explored by this court, we give it our attention.

Before 1862 there was no wrongful death action in this state. (*Kramer* v. *San Francisco Market Street R. Co.* (1864), 25 Cal. 434, 435.) In that year the Legislature, following the philosophy of Lord Campbell's Act,[1] and to a substantial

---

[1]Lord Campbell's Act: ''An Act for compensating the Families of Persons killed by Accidents. [26th August 1846.]

''WHEREAS no Action at Law is now maintainable against a Person who by his wrongful Act, Neglect, or Default may have caused the Death of another Person, and it is oftentimes right and expedient that the Wrongdoer in such Case should be answerable in Damages for the Injury so caused by him: Be it therefore enacted by the Queen's most Excellent Majesty, by and with the Advice and Consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the Authority of the same, That whensoever the Death of a Person shall be caused by wrongful Act, Neglect, or Default, and the Act, Neglect, or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an action and recover Damages in respect thereof, then and in every such Case the Person who would have been liable if Death had not ensued shall be liable to an Action for Damages; notwithstanding the Death of the Person injured, and although the Death shall have been caused under such Circumstances as amount in Law to Felony.

''II. And be it enacted, That every such Action shall be for the benefit

extent its phraseology, created such a cause of action. (Stats. 1862, p. 447.) Like Lord Campbell's Act (set out in material part in the margin), it provided (in section 1) that "Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default, is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, . . . the person who . . . would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured . . ."

In the interest of accuracy, and to dispel a misconception which has found its way into some writings, hereinafter mentioned in more detail, it should be noted that the quoted language of section 1 (which is almost identical with the language of the original Lord Campbell's Act) does not expressly make the right to recover dependent on the absence of contributory negligence on the part of the decedent. Such language (and the same may be said of Lord Campbell's Act) indicates no design by the Legislature to state a rule either of requirement that plaintiff show as a part of his case that the decedent was free of contributory negligence, or that contributory negligence of the decedent should or should not be available as a defense. It makes no reference whatsoever to the conduct of the injured person (the decedent) or to his ultimate right to recover if he had survived. In terms it requires only that "the act, neglect, or default" *of the tortfeasor be such* ,as would "have entitled the party injured to maintain an action and recover damages in respect thereof." Obviously, it does not state that the conduct of "the party

of the Wife, Husband, Parent, and Child of the Person whose Death shall have been so caused, and shall be brought by and in the Name of the Executor or Administrator of the Person deceased; and in every such Action the Jury may give such Damages as they may think proportioned to the Injury resulting from such Death to the Parties respectively for whom and for whose Benefit such Action shall be brought; and the Amount so recovered, after deducting the Costs not recovered from the Defendant, shall be divided amongst the before-mentioned Parties in such Shares as the Jury by their Verdict shall find and direct.

"III. Provided always, and be it enacted, That not more than One Action shall lie for and in respect of the same Subject Matter of Complaint, and that every such Action shall be commenced within Twelve Calendar Months after the Death of such deceased Person.

"IV. And be it enacted, That in every such Action the Plaintiff on the Record shall be required, together with the Declaration, to deliver to the Defendant or his Attorney a full Particular of the Person or Persons for whom and on whose Behalf such Action shall be brought, and of the Nature of the Claim in respect of which Damages shall be sought to be recovered. . . ." (9 & 10 Vict., ch. 93, pp. 531-532.)

injured'' must have been free from contributory negligence or that such negligence on his part should or should not constitute a defense to the cause of action created. Thus the Legislature did not negate its ordinarily to be presumed acceptance of the contemporary construction by the courts of the similar language in Lord Campbell's Act, hereinafter discussed, but left the courts of this state free to interpret and apply the statute in the light of the common law as it might appear in this field.

■ Another misconception appears to be that section 1714 of the Civil Code creates, and by its language limits, the defense of contributory negligence. (See 42 Cal.L.Rev. 312.) But the defense of contributory negligence is not of statutory creation. ■ As was stated by the United States Supreme Court at least as long ago as 1877, ''One who by his negligence has brought an injury upon himself cannot recover damages for it. Such is the rule of the civil and of the common law.'' (*Baltimore & P. R. Co.* v. *Jones* (1877), 95 U.S. 439, 442 [24 L.Ed. 506].) ■ But even if we take section 1714 as generally definitive of contributory negligence in California, we find nothing· in it which precludes application in wrongful death cases. The section reads: ''Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief.''

■ Clearly, the ''injury occasioned to another'' which is spoken of in section 1714 is the injury to the person who is the victim of the actor's negligence. As pertinent in a wrongful death case, the ''injury occasioned to another'' has caused the death of the victim; the cause of action created by the wrongful death statute is not for the injured person but is for his heirs or next of kin to compensate for their pecuniary loss resulting from their economic relationship to, and the wrongful death of, the injured person. The plaintiffs are not persons injured as contemplated by the statute; they are persons who have suffered consequential damage ensuing from the death of the person injured. Thus section 1714, like the wrongful death statute, is completely silent on the question of contributory negligence as a defense to actions brought under the latter act. ■ Insofar as the language of section 1714 is concerned it is substantially the same as

the general rule of the common law and, hence, is to be construed as a continuation thereof, not as a new enactment. (Civ. Code, § 5.)

However, it can be urged, and properly so, that since the substance of Lord Campbell's Act was adopted in California without qualifying applicatory rules it is to be strongly presumed that the Legislature acted in the light of the contemporary construction of that act (see 50 Am.Jur. 309-311, § 319), together with the rules which were being applied to actions upon it and defenses thereto (see *Holmes* v. *McColgan* (1941), 17 Cal.2d 426, 430 [110 P.2d 428]; *Union Oil Associates* v. *Johnson* (1935), 2 Cal.2d 727, 735 [43 P.2d 291, 98 A.L.R. 1499]; *Estate of Potter* (1922), 188 Cal. 55, 68 [204 P. 826]). In respect to contributory negligence of the decedent as a defense in such actions there can be no doubt that the rule is as old as the act. Lord Campbell's Act was enacted in 1846. In 1849 the Court of Common Pleas had before it several cases in which negligence and contributory negligence were issues and in one of which (*Thorogood* v. *Bryan* (1849), 8 C.B. 115, 65 E.C.L. 115, 137 English Reprint 452 (Common Pleas Book 15)) the action was based on Lord Campbell's Act. The report of the case relates, "The first of these was an action upon the case brought by the plaintiff Sarah Thorogood, as administratrix of her late husband . . . under the statute 10 Vic. c. 93, to recover damages against the defendant for negligently causing the intestate's death . . . [P. 453.] The learned judge told the jury, that, if they were of opinion that. . . . want of care on the part of the driver of Barber's [deceased's] omnibus in not drawing up to the kerb to put the deceased down, or any want of care on the part of the deceased himself, had been conducive to the injury, in either of those cases,—notwithstanding the defendant (by her servant) had been guilty of negligence, their verdict must be for the defendant." It was held that the instruction properly stated the law and the judgment for defendant was affirmed.

Some 10 years later (in *Senior* v. *Ward* (1859), 1 E. & E. 385, 102 E.C.L. 385, 120 English Reprint (King's Bench, Book 49) 954) we find Lord Campbell, himself, as Chief Justice, speaking for the Queen's Bench and declaring the law applicable to an action upon the statute in question. The report tells us: (P. 954.) "At the trial, before Cockburn C.J., at the last Summer Assizes for Derbyshire, it appeared

that the action was brought, under stat. 9 & 10 Vict. c. 93, by the plaintiff, a widow, to recover damages for the death of her son, John Senior, who was accidentally killed while in the employ of the defendant. . . . [P. 956.] Lord Campbell C.J. now delivered the judgment of the Court. We are of opinion that the rule to enter the verdict in this case for the defendant or to enter a nonsuit must be made absolute. The authorities upon the subject are all collected and commented upon in *The Bartonshill Coal Co.* v. *Reid* (3 Macq.App. Ca. 266). According to these authorities, the action would not have been maintainable if the deceased had come to his death purely from the negligence of his fellow servants employed in the same work with him. However, a strong case of negligence on the part of the defendant, as contributing to the death, has been made out; and, if an answer had not been given to this case, by shewing negligence on the part of the deceased which contributed to his death, we think the defendant ought to have been held liable. . . [P. 957.] We conceive that the Legislature, in passing the statute on which this action is brought, intended to give an action to the representatives of a person killed by negligence only where, had he survived, he himself, at the common law, could have maintained an action against the person guilty of the alleged negligence. Under the circumstances of this case, could the deceased, if he had survived, have maintained an action against the defendant for what he suffered from the accident? We think that he could not: for, although the negligence of the defendant might have been an answer to the defence that the accident was chiefly caused by the negligence of a fellow servant, the negligence of the plaintiff himself, which materially contributed to the accident, would, upon well established principles, have deprived him of any remedy. Volenti non fit injuria. . . . Judgment for the defendant.''
To the same effect see *Witherley* v. *The Regent's Canal Co.* (1862), 12 C.B.N.S. 2, 104 E.C.L. 2, 142 English Reprint (Common Pleas Book 20) 1041, 1042.

 Thus the availability of contributory negligence as a defense to wrongful death actions, brought under the statute which appears to be the progenitor of the California act, was firmly established when California acted. As hereinabove indicated, it is to be presumed that such enactment was with knowledge of the English decisions pertinent to application of the law. (See *Holmes* v. *McColgan* (1941), *supra,* 17 Cal.2d 426, 430; *Union Oil Associates* v. *Johnson*

(1935), *supra*, 2 Cal.2d 727, 735; *Estate of Potter* (1922), *supra*, 188 Cal. 55, 68; see also 82 C.J.S. 860-863, § 372, and cases there cited.) Further examination òf the California legislation and of the decisions which followed it and its several amendments, explains, at least historically, the origin, and demonstrates the establishment, of the pertinent rule in this state.

Section 3 of the 1862 California statute provided that the action should be brought in the name of the personal representative for the exclusive benefit of the widow and next of kin of the deceased, and that the jury could consider the pecuniary injuries resulting to the widow and next of kin and award both pecuniary and exemplary damages. Section 2 of the statute included the statement of a rule which would now fit the definition of a presumption (Code Civ. Proc., § 1959; see also, *id.* § 1961). It declared that "Whenever the death of any person shall be caused by an injury received in falling through, or by drowning after having fallen through, any opening or defective place in any sidewalk, street, alley, or wharf, in any city . . ., the death of such person shall be deemed to have been caused by the wrongful neglect and default of the person or persons . . . whose duty it was, at the time . . . to have kept in repair such sidewalk, street, alley, or wharf . . ."

In 1867 the court was called upon to apply the statute in an action (*Gay* v. *Winter*, 34 Cal. 153) brought by a surviving father, as the personal representative, to recover for the death of his 5-year-old son, who was alleged to have drowned after falling through a hole in the street and thence (p. 154) "into the waters of the Bay of San Francisco beneath." Defendants moved for a nonsuit on the ground, among others, that the evidence affirmatively showed that *plaintiff father* was himself contributively negligent in allowing the deceased minor (p. 156) "to go alone about said street crossing, where said hole was known to exist." Judgment of nonsuit was granted, and on appeal by plaintiff the judgment was reversed. That the court considered that contributory negligence of the decedent (or of the plaintiff himself, if established) would constitute a bar to recovery is apparent from its opinion. It specifically states that (p. 162) "How far the plaintiff was bound to go for the purpose of showing that the death of his intestate was not attributable to his own negligence, appears to be the principal question in the case."

After then referring to rules that deny recovery to plaintiff in a personal injury action (p. 163) ''if it appears that his own negligence contributed in any degree to the injury which he has sustained,'' it was stated that (pp. 163-164) ''In a general sense, the burden of proof is on the plaintiff, and he must undoubtedly make a case, in view of which the jury can say that they believe the injury was sustained through the fault of the defendant, unaccompanied by any fault on the part of the plaintiff,''[2] but that such a rule is inadequate where plaintiff (p. 164) ''is wholly unable to make any proof as to his own conduct,'' and in such event (p. 164) ''the jury are at liberty to infer ordinary care and diligence on the part of the plaintiff from all the circumstances of the case—his character and habits and the natural instinct of self preservation. . . . If the plaintiff makes a case which does not charge him with negligence we think his case should be allowed to go to the jury. [Citations.] It should have been left to the jury to say whether the plaintiff's intestate exercised ordinary care and diligence, under an instruction from the Court that if he did not the plaintiff would not be entitled to a verdict.''

Although the discussion by the court, as above epitomized, appears to refer indiscriminately to contributory negligence by the deceased child as well as by the plaintiff father (i.e., the personal representative), the opinion clearly indicates the views that (1) as a general rule a personal injury plaintiff should (p. 164) ''make a case which will leave him blameless'' (cf. May v. Hanson (1855), 5 Cal. 360, 365 [63 Am.Dec. 135], ['' [I]t is not incumbent on the plaintiff to prove the exercise by him of ordinary care to avoid the injury, but . . . the proof of want of it on the part of the plaintiff, lies on the defendant; . . . he who avers a fact in excuse of his own misfeasance, must prove it'']), and (2) that if unable to produce proof of his own or the decedent's conduct then he is entitled to the benefit of an ''inference'' (more properly, presumption) of care on his part and (p. 164) ''If the plaintiff makes a case which does not charge him with negligence we think his case should be allowed to go to the jury '' It is worthy of mention that the holding of the court concerning the burden of proof in relation to contributory negligence appears to have been reached without reliance on the positive

---

[2]The opinion in this case, 34 Cal. 153, 162-164, sometimes uses the word ''plaintiff'' as synonymous with the deceased.

declaration of section 2 of the 1862 statute that the death of a person caused by drowning after falling through a hole in the street "shall be deemed to have been caused by the wrongful neglect" of those whose duty it was to maintain the street in repair.

In 1872 the 1862 statute was repealed and reenacted as section 377 of the Code of Civil Procedure, reading as follows: "When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or when the death . . . is caused by an injury received in falling through any opening or defective place in any sidewalk, street, alley, square, or wharf, his heirs or personal representatives may maintain an action for damages against the person whose duty it was, at the time of the injury, to have kept in repair such sidewalk or other place. In every such action the jury may give such damages, pecuniary or exemplary, as, under all the circumstances of the case, may to them seem just." Thus, the reenactment permitted the action to be brought by the heirs as well as by the personal representatives, deleted the language expressly requiring that "the act, neglect, or default . . . [of the tort-feasor be] such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof," and likewise deleted the positive direction that a death caused by falling through a defective sidewalk, wharf, or street, etc., "shall be deemed to have been caused by the wrongful neglect" of those charged with the repair thereof. Two years later (Code Amendments 1873-1874, p. 294) the section was again amended; this time the reference to defective sidewalks, wharves, streets, etc., was deleted from section 377, the cause of action under that section was limited to the wrongful death "of a person not being a minor," and actions for the wrongful death of a minor were left for treatment in section 376 of the Code of Civil Procedure.

It has been asserted (see 42 Cal.L.Rev. 310) that both Lord Campbell's Act and the substantially similar 1862 California statute "expressly provided that the cause of action should only vest in the personal representative of the deceased, if the deceased, had he survived, could have maintained an action against the tortfeasor,"[3] and in reliance upon *Gay* v. *Winter*

---

[3] See also: Prosser on Torts, p. 965; 16 Am.Jur. 61, § 82; Annotation 74 A.L.R. 14.

(1867), *supra,* 34 Cal. 153, that ''Under this statute it is necessary that the plaintiff prove, as a part of his case, not only the negligence of the defendant but that the deceased was free from negligence contributing in any degree to the injury which resulted in his death. Thus the statute created a cause of action in the personal representative only in those cases where the decedent did not, by his own negligence, contribute to the injury which resulted in his death.''

However, as we have already noted, the statute is descriptive only of the act of the tort feasor; it makes no reference whatsoever to the conduct of the decedent or to his *ultimate* right to recover, as against a defense of contributory negligence, if he had survived, and neither does the opinion in *Gay* v. *Winter* hold that the statute required a showing of decedent's freedom from contributory negligence before a recovery could be had. It follows that the further suggestion (42 Cal.L. Rev. 311-313) that by omitting from the 1872 enactment of section 377 the provision which assertedly ''made the decedent's freedom from negligence a condition upon the cause of action which it created,'' the Legislature intended to remove contributory negligence by the deceased as a bar to recovery in a wrongful death action, is without merit. In the first place, the Legislature had never by any language it used ''made the decedent's freedom from negligence a condition upon the cause of action which it created,'' and *Gay* v. *Winter* does not so hold. In the second place, if it had been the intention of the Legislature to provide that contributory negligence should not defeat recovery, then it could easily and clearly have so stated, as has been done in section 3708[4] of the Labor Code (see also Lab. Code, § 2801). Moreover, it appears quite as likely that there was an intent, in view of the discussion and holding in *Gay* v. *Winter* (1867), *supra,* 34 Cal. 153, 162-164, to (1) recognize contributory negligence as a bar to recovery in defective street, etc., cases, notwithstanding the presumption theretofore positively declared, and (2) more clearly accept contributory negligence as merely defensive matter in all wrongful death cases, rather than to

---

[4]Section 3708: ''In such action [against the uninsured employer] it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant. No contract or regulation shall restore to the employer any of the foregoing defenses.''

consider the negation thereof to be a part of plaintiff's case in chief, whether it lay in his power to produce evidence on the subject or otherwise.

 More important to ascertaining the established law it appears indisputable that, regardless of whether we view the origin of the contributory negligence rule in wrongful death cases as being sound in law and reason or as being questionable in both, the rule itself has emerged as progenerate in its own right. From the time California's original wrongful death statute was enacted in 1862, presumptively in the light of the English court decisions under Lord Campbell's Act, hereinabove discussed, down to the present the California cases have consistently and unswervingly followed the rule, which likewise has been held to prevail, in the absence of express statutory limitation, in most other jurisdictions,[5] that contributory negligence on the part of the decedent bars recovery in wrongful death actions. (See e.g. of California: *Gay* v *Winter* (1867), *supra*, 34 Cal. 153, 164; *Glascock* v. *Central Pac. R. Co.* (1887), 73 Cal. 137, 141 [14 P. 518]; *Pepper* v. *Southern Pac. Co.* (1895), 105 Cal. 389, 399 [38 P. 974]; *Studer* v. *Southern Pac. Co.* (1898), 121 Cal. 400 [53 P. 942, 66 Am.St.Rep. 39]; *Lemasters* v. *Southern Pac. Co.* (1900), 131 Cal. 105, 107 [63 P. 128]; *Green* v. *Southern Cal. Ry. Co.* (1902), 138 Cal. 1, 2 [70 P. 926]; *Shade* v. *Bay Counties*

[5]See 17 Corpus Juris 1242 (and Supplements), note 54. for cases cited as so holding from the following jurisdictions other than California: .
United States, Alabama, Arkansas, Colorado, Florida, Connecticut, Delaware, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Jersey, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Porto Rico, Rhode Island, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Canada, British Columbia, Manitoba, Nova Scotia, Ontario, Newfoundland.
To the above list, Corpus Juris Secundum (25 C.J.S. 1140, 1141, § 46, 1955 Pocket Part) adds Nevada and South Dakota and American Jurisprudence. (16 Am.Jur. 88-89, § 130, notes 13 and 14) adds Idaho and Oklahoma.
Corpus Juris Secundum states the rule thus: ''In the absence of any applicatory statute changing the rule, contributory negligence such as would have barred an action by decedent is a good defense to an action for his death.'' (25 C.J.S. 1140, § 46; see also cases cited under note 60.)
American Jurisprudence phrases the rule as follows: ''In an action for death wrongfully caused by negligence of the defendant, the general rule is that negligence of the decedent proximately contributing to the injury resulting in death bars recovery in favor of the beneficiaries for the loss they have sustained thereby. This is true even where the death of the deceased results from the violation by the defendant of a duty imposed upon him by statute where the statute prescribing the duty does not exclude such defense.'' (16 Am.Jur. 88-89, § 130.)

*Power Co.* (1907), 152 Cal. 10, 13 [92 P. 62]; *Young* v. *Southern Pac. Co.* (1920), 182 Cal. 369, 375, 383 [190 P. 36]; *Read* v. *Pacific Elec. Ry. Co.* (1921), 185 Cal. 520, 523 [197 P 791]; *Carroll* v. *Beavers* (1954), 126 Cal.App.2d 828, 832 [273 P. 56]; see also *Dickinson* v. *Southern Pac. Co.* (1916), 172 Cal. 727 [158 P. 183]; *Crabbe* v. *Mammoth Channel G. Min. Co.* (1914), 168 Cal. 500, 504-506 [143 P. 714]; 8 Cal. Jur. 988-989, § 41.) And in 1901 (prior to abolition of the fellow-servant doctrine in this state by Stats. 1911, p. 796) it was declared in *Hedge* v. *Williams*, 131 Cal. 455, 457 [63 P. 721, 64 P. 106, 82 Am.St.Rep. 366], that if the death had been caused by negligence of a fellow servant of the deceased, then the heirs could not recover against the employer.

Meanwhile Code of Civil Procedure, section 377 (since the enactment in 1872) has been amended three times. In 1901 (Stats. 1901, p. 126) a provision was added that if the person causing the death ''is employed by another who is responsible for his conduct, then'' the action could be maintained ''also against such other person.'' In 1935 (Stats. 1935, p. 460) the section was extended to cover the wrongful death ''of a minor person who leaves surviving him either a husband or wife or child or children.'' By the next and most recent amendment (Stats. 1949, ch. 1380, § 4) provision was made, among other things, for survival of the action in case of death of the tort feasor. At no time, however, has contributory negligence been abolished as a defense. ▪ It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions[6] and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them. (*Estate of Calhoun* (1955), 44 Cal.2d 378, 384-386 [282 P.2d 880]; *People* v. *Perkins* (1951), 37 Cal.2d 62, 63 [230 P.2d 353]; *McFadden* v. *Jordan* (1948), 32 Cal.2d 330, 334 [196 P.2d 787]; *Penaat* v. *Terwilliger* (1944). 23 Cal.2d 865, 871 [147 P.2d 552]; *In re Halcomb* (1942), 21 Cal.2d 126, 129 [130 P.2d 384]; *Whitley* v. *Superior Court* (1941), 18 Cal.2d 75, 78 [113 P.2d 449]; *Miller* v. *McColgan* (1941), 17 Cal.2d 432, 439 [110 P.2d 419, 134 A.L.R. 1424]; *Blodgett* v. *Superior Court* (1930), 210 Cal. 1, 13 [290 P. 293, 72 A.L.R. 482]; *Slocum* v. *Bear Valley Irr. Co.* (1898), 122

---

[6]The rule as applicatory to the decisions of a foreign jurisdiction from which a statute is substantially copied has already been stated, *supra*, pp. 193-195.

Cal. 555, 556 [55 P. 403, 68 Am.St.Rep. 68]; see also 23 Cal. Jur. 783, § 159; note, 2 U.C.L.A. Law Rev. 269, 271.)

 Under the circumstances which have been related it must be recognized that until the Legislature sees fit to provide otherwise the rule is established in this state that in wrongful death actions contributory negligence on the part of the deceased is defensive matter and, when shown, will bar recovery.

Finally, plaintiffs contend that they were erroneously prevented by the court from exercising their peremptory challenges in the selection of the jury. The settled statement shows that prior to the trial and in chambers, the trial judge informed counsel for both plaintiffs and defendant that the practice in his department with respect to waiver of peremptory challenges is as follows: ''That once an attorney has waived any peremptory challenge to the jurors in the box, that challenge is gone, so far as those jurors are concerned; that a peremptory can thereafter be exercised only with respect to a juror or jurors called into the box after the said waiver. They were also told that if either attorney were dissatisfied with this method of handling peremptories he, being advised in advance of what would happen, should, if desiring to make a record, come to the bench and make the record outside the hearing of the jurors, so that . . . [such attorney] would not be embarrassed by having to challenge in the presence of the jurors someone sitting in the box whom he knew would not be excused.'' The jury was then selected in the following manner: After the jury box was filled, plaintiffs exercised four peremptory challenges alternately with the defendant and then passed a peremptory challenge (plaintiffs' fifth) to the jurors then in the box Defendant then exercised a peremptory challenge to juror No. 9, and after a new venireman had entered the box plaintiffs in open court challenged juror No. 10, who had been in the box at the time plaintiffs waived their fifth peremptory. The court disallowed this challenge on the ground that the juror had been in the box at the time plaintiff had passed a peremptory and that their peremptory was now restricted to the juror who had been called to fill the vacancy created by defendant's last exercised peremptory challenge. The court also reminded counsel of the conference in chambers concerning the rule it then proposed to impose in respect to the exercise of peremptory challenges. Thereupon the attor-

ney, by leave of court, further interrogated juror No. 10 as to the effect upon him of the unsuccessful challenge and thereafter withdrew an exception he had taken to the court's ruling and also expressly withdrew his challenge to No. 10. Later, the attorneys went to the bench and plaintiffs' attorney protested that he had forgotten what the court had said in chambers and renewed his exception to the court's ruling on the matter. Juror No. 10 remained on the jury throughout the case.

Section 601 of the Code of Civil Procedure reads: " . . Each side is entitled to six peremptory challenges. If no peremptory challenges are taken until the panel is full, they must be taken *or passed* by the sides alternately, commencing with the plaintiff, *and if both sides pass consecutively, the jury shall then be sworn, unless the court, for good cause, shall otherwise order.* Each side shall be entitled to have the panel full before exercising any peremptory challenge. *The number of peremptory challenges remaining with a side shall not be diminished by any passing of a peremptory challenge.*" The portions in italics were added in 1953 (Stats. 1953, ch. 1578, § 1), after the trial of the instant case.

That plaintiffs were entitled to exercise the peremptory challenge which they sought, is clear. The broad power of a judge to control the proceedings before him does not go so far as to warrant an exaction contrary to law. As declared in *Silcox* v. *Lang* (1889), 78 Cal. 118, 123-124 [20 P. 297], "The right to challenge a certain number of jurors peremptorily is absolute under the statute. (Code Civ. Proc., § 601.) The fact that the appellant had once passed the jury, including the juror afterward sought to be challenged, did not cut off this right. The proper practice in the selection of a jury in a civil case is to fill the panel. and upon one of the jurors being challenged for any cause, or 'without cause,' to immediately call another to take his place, so that a party, in determining whether to challenge or not, may do so with a full panel before him. [Citations.]" (See also *Taylor* v. *Western Pac. R. Co.* (1873), 45 Cal. 323, 329-332.) Nothing to the contrary appears in *Vance* v. *Richardson* (1895), 110 Cal. 414 [42 P. 909], where, when the panel was full, defendant-appellant waived "our peremptory for the present," and counsel for plaintiff then stated "I am satisfied with the jury." There was in the Vance case no substitution of a new juror for one challenged by respondent, such as occurred in *Silcox* v. *Lang* as well as in the case now

before us. *Vallejo etc. R. Co.* v. *Reed Orchard Co.* (1915), 169 Cal. 545, 559 [147 P. 238], is not here material, as it appears to merely hold that no error occurred when the court permitted plaintiff-respondent to "exercise its remaining peremptory challenge after the panel was filled and all the jurors had been examined and passed for cause by both parties." (*Cf. Austin* v. *Lambert* (1938), 11 Cal.2d 73, 79-80 [77 P.2d 849, 115 A.L.R. 849].)

However, here as in *People* v. *Estorga* (1928), 206 Cal. 81, 87 [273 P. 575] (see also *People* v. *Hickman* (1928), 204 Cal. 470, 481 [268 P. 909, 270 P. 1117]), the appellant "has made no affirmative showing, and does not offer to show, that any of the . . . jurors who were actually sworn and served in the trial of the cause were biased, prejudiced, or in any way unfit to serve as trial jurors; nor does it appear that by reason of the manner in which the jury was selected the . . . [appellant] did not have a fair and impartial trial." Under such circumstances, and although the method by which the jury was selected was erroneous and cannot be approved by this court, the error nevertheless does not appear on the record before us, which is epitomized on pages 186-188, *supra,* and which also establishes that the jurors were polled and were unanimous in their verdict, to have resulted in a miscarriage of justice, and hence furnishes no ground for reversal of the judgment. (See Cal. Const., art. VI, § 4½; see also *People* v. *Hoyt* (1942), 20 Cal.2d 306, 318 [125 P.2d 29]; *Jackson* v. *Superior Court* (1937), 10 Cal.2d 350, 358 [74 P.2d 243, 113 A.L.R. 1422]; *Switzler* v. *Atchison etc. Ry. Co.* (1930), 104 Cal.App. 138, 151 [285 P. 918]; *People* v. *Rambaud* (1926), 78 Cal.App. 685, 692 [248 P. 954].)

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

TRAYNOR J., Concurring and Dissenting.—I concur in the conclusion and reasoning of the majority opinion that contributory negligence is a defense in a wrongful death action, but I agree with Justice Carter that the trial court committed prejudicial error in denying plaintiffs their statutory right to a peremptory challenge. For that reason I would reverse the judgment.

CARTER, J.—I dissent.

I cannot agree with the reasoning of the majority that the

contributory negligence of a decedent either should, or must, be imputed to the heirs of said decedent in a wrongful death action.

The cause of action for wrongful death is wholly statutory; it is entirely separate and distinct from any cause of action which the decedent (had he lived) might have had (*Bond* v. *United Railroads*, 159 Cal. 270 [113 P. 366, Ann. Cas. 1912C 50, 48 L.R.A.N.S. 687]; *McLaughlin* v. *United Railroads*, 169 Cal. 494 [147 P. 149, Ann.Cas. 1916D 337, L.R.A. 1915E 1205]; *Clark* v. *Goodwin*, 170 Cal. 527 [150 P. 357, L.R.A. 1916A 1142]).

The majority opinion, speaking of the three amendments to section 377 of the Code of Civil Procedure, states that "At no time, however, has contributory negligence been abolished as a defense." Contributory negligence was never specifically *mentioned* by the section as a defense—although the appellate courts *assumed* that contributory negligence on the part of the decedent would bar recovery by his heirs or personal representative. The language in the original enactment which could have been said to imply that the decedent's contributory negligence was a defense to an action brought by the personal representative was deleted when section 377 of the Code of Civil Procedure was enacted giving to the heirs also the right to sue. Judge Paul Nourse (42 Cal.L.Rev. 310 et seq.) points out that "Upon the grounds that the cause of action for wrongful death is a new cause of action and separate and distinct from any cause of action that the deceased might have had, it has been uniformly held that the admissions of the decedent against his interests and which might tend to establish his negligence, are not admissible against his heirs in an action brought under Section 377 of the Code of Civil Procedure [*Hedge* v. *Williams*, 131 Cal. 455 [63 P. 721, 64 P. 106, 82 Am.St.Rep. 366]; *Marks* v. *Reissinger*, 35 Cal. App. 44, 54 [169 P. 243]]. It seems anomalous to hold that the negligence of the decedent will defeat a cause of action for his death, and to hold that his own admissions may not be used as proof of his negligence.

"The Legislature not having made the decedent's freedom from negligence a condition upon the cause of action which it created, the Courts are without power to graft such conditions upon that cause of action. To do so would be to amend the statute by judicial decree. [Cal. Const., art. III, § 1; *Allen* v. *Allen*, 95 Cal. 184 [30 P. 213, 16 L.R.A. 646]; *Moore*

*v. United States F. & G. Co.*, 122 Cal.App. 205 [9 P.2d 562] ; *Chester v. Hall*, 55 Cal.App. 611, 615 [204 P. 237].]''

Section 1714 of the Civil Code is the section which contains the defense of contributory negligence. That section provides that ''Everyone is responsible, not only for the result of his wilful acts but also for injuries occasioned to another by his want of ordinary care or skill . . . *except so far as the latter has, wilfully or by want of ordinary care, brought the injuries upon himself.* . . .'' (Emphasis added.) Judge Nourse notes that ''It is clear that there is nothing in the section which allows one, who through negligence has injured another, to escape liability because someone other than the person injured by his negligence contributed to that injury. Yet this is what occurs when a defendant tortfeasor is permitted to plead the negligence of the decedent in an action for wrongful death founded upon Section 377 of the Code of Civil Procedure. It is the *heirs* of the decedent who have suffered pecuniary loss, who are the persons injured by the act of the tortfeasor. Certainly it cannot be said that the widow and minor children of a man killed by the negligence of another have, in the words of Section 1714, 'wilfully or by want of ordinary care brought the injuries' upon themselves.'' (Emphasis added.)

Judge Nourse notes that the reasons given for the defense of contributory negligence in the decided cases have no application to an action for wrongful death. Quoting from *Fujise v. Los Angeles Ry. Co.*, 12 Cal.App. 207, 211 [107 P. 317], it appears that ''In order that contributory negligence shall prevent the recovery of damages for a personal injury, it must appear that the negligence is that of the injured person or of someone over whom he exercised some control. . . . The reason for the rule which so relieves the defendant from the payment of damages for his negligence where the plaintiff has contributed to the injury by his own negligence, as it is applied in this state, is based upon an argument of convenience, to wit, the impossibility of successfully apportioning the damages between the parties, and not for the reason that the law relieves the defendant from responsibility merely because the injured party has contributed to the result by his own negligence or wrongful act.''

Judge Nourse points out that in an action for wrongful death the plaintiffs have brought no injury upon themselves. The fact that the person, whose death gives rise to their cause of action, has by his own negligence, in some degree ''however slight'' contributed to his own death, is, under the language

of the court just quoted, or under the provisions of section 1714 of the Civil Code of no more moment than the contributing negligence of some third person.

An additional distinction between the ordinary tort action and a wrongful death action are the damages recoverable: In the ordinary personal injury action, the plaintiff recovers for medical expenses, pain or suffering. together with compensatory damages; in a wrongful death action, the heirs may recover damages for the injuries they have sustained: loss of support, society, comfort and protection.

Judge Nourse "submits" that the basis for the defense of contributory negligence is entirely lacking in an action for wrongful death even though the cases dealing with actions under section 377 of the Code of Civil Procedure have held that contributory negligence was a defense. He says that if the cases are wrong, this court should not hesitate to overrule them.

I agree with the logic and reasoning set forth by Judge Nourse; I feel that the cases holding contributory negligence a defense in wrongful death actions are wrong and should be overruled and that the error should not be perpetuated as is being done in the instant case.

I also disagree with the majority in its holding that the failure of the trial court to obey the clear mandate of section 601 of the Code of Civil Procedure was not prejudicial error. The evidence was in sharp conflict concerning the person responsible for the negligence which caused the death of plaintiffs' decedent. The jury returned a defendants' verdict. We are told by the majority that plaintiffs made no "affirmative showing" that any of the jurors were biased, prejudiced, or unfit to serve as jurors. As a matter of fact, it would be impossible to tell the effect the juror in question had on the adverse verdict returned by the jury. It was also impossible for the plaintiffs to show "affirmatively" that the juror in question contributed to the loss of the case. The problem involved here does not fall under the provisions of section 657, subdivision 2, of the Code of Civil Procedure, and even if plaintiffs had produced jurors' affidavits of bias or prejudice on the part of the challenged juror it would have availed them nothing.

It is well settled that affidavits or evidence of any character concerning the mental attitude of either concurring or dissenting jurors which tend to contradict, impeach or defeat their verdict are inadmissible. (*Murphy* v. *County of Lake*,

106 Cal.App.2d 61 [234 P.2d 712]; *Barrett* v. *City of Clare-mont*, 41 Cal.2d 70 [256 P.2d 977]; *Marino* v. *County of Tuolumne*, 118 Cal.App.2d 675 [258 P.2d 540]; *Anderson* v. *County of San Joaquin*, 110 Cal.App.2d 703 [244 P.2d 75].) Even affidavits or testimony of third persons offered to prove admissions of jurors to impeach the verdict are not coun-tenanced. (*Noble* v. *Key System, Ltd.*, 10 Cal.App.2d 132 [51 P.2d 887].) In fact, the authorities are uniform to the effect that affidavits or oral evidence of either concurring or dissenting jurors may not be received to contradict, impeach or defeat their verdict, except to show that the verdict was secured by chance. (*Crabtree* v. *Western Pac. R. Co.*, 33 Cal. App.2d 35 [90 P.2d 835]; *Johnson* v. *Gray*, 4 Cal.App.2d 72 [40 P.2d 575]; *Toomes* v. *Nunes*, 24 Cal.App.2d 395 [75 P.2d 94]; *Phipps* v. *Patterson*, 27 Cal.App.2d 545 [81 P.2d 437]; *Gray* v. *Robinson*, 33 Cal.App.2d 177 [91 P.2d 194].)

In view of the settled law of this state as announced in the foregoing authoriites it is difficult for me to devise a means or method whereby appellant could have made a show-ing of prejudice to his case as the result of the admittedly erroneous ruling of the trial court against him. The record discloses that he was denied his statutory right to the exercise of a peremptory challenge. This the majority concedes. The verdict of the jury was against him notwithstanding the conceded fact that the evidence was sufficient to support a verdict in his favor. Since it was not possible under the rules of law above announced for appellant to have made a showing as to what took place in the jury room or of the state of mind of the juror he sought to challenge, it is obvious that there is no basis in law or fact for the statement of the majority that appellant was required to make an affirmative showing that he was prejudiced as the result of the error committed by the trial court in denying appellant his statutory right to exercise the peremptory challenge here in question in order to obtain a reversal of the judgment.

In view of the foregoing it is obvious that the approach of the majority to the problem here involved is wholly un-realistic. If the majority is right in this case, then a trial judge may announce at the beginning of the trial or at any time during the trial that neither party may exercise any peremptory challenge, and although an exception is taken to the ruling and either or both parties seek to impose peremptory challenges and are denied the right to do so by the court, this court could hold that since there is no showing of preju-

dice by the party against whom the verdict was rendered, a judgment rendered thereon must be affirmed, thus abrogating the statutes which allow peremptory challenges to jurors as a matter of right in both civil and criminal cases. I have no doubt that every trial lawyer will be shocked to learn that such is the law of this state.

None of the authorities cited in the majority opinion supports the view expressed therein on this point. In none of those cases was a party denied the right to exercise a peremptory challenge where he admittedly had the right to impose such challenge as in the case at bar. It is true that there is some loose language in some of those cases to the effect that where a party challenges the ruling of the trial court with respect to the qualifications of a juror, he must make an affirmative showing that the ruling of the trial court was prejudicial to him, but this is a far cry from holding that where the trial court arbitrarily denies a party the statutory right to exercise a peremptory challenge, he must in some manner not disclosed by the majority opinion here nor in any of the authorities cited, make an affirmative showing of prejudice in order to obtain a reversal of a judgment entered upon a verdict adverse to the party denied such right.

Because of the prejudicial error committed by the trial court in denying plaintiffs their statutory right to a peremptory challenge and because I firmly believe that contributory negligence is not, nor should it be, a defense in a wrongful death action, I would reverse the judgment.

Appellants' petition for a rehearing was denied November 4, 1955. Carter, J., and Traynor, J., were of the opinion that the petition should be granted, and Carter, J., filed the following opinion:

CARTER, J.—The majority of this court has modified its opinion and denied a rehearing in this case notwithstanding the fact that the petition for rehearing pointed out that never before has an appellate court in this state held that the denial of the right to exercise a peremptory challenge is a mere error in procedure which may be cured by the application of section 4½ of article VI of the Constitution of California and that numerous cases holding to the contrary were not even mentioned in the majority opinion. As counsel for appellant point out in their petition for rehearing there is a long and unbroken line of well considered opinions of this court and the District Courts of Appeal holding squarely that the right to

challenge peremptorily is absolute, and not qualified by the necessity of showing injury. This rule was reannounced as late as July 27th, 1951 in the case of *People* v. *Diaz*, 105 Cal. App.2d 690, 696 [234 P.2d 300] (hearing denied by this court without dissenting vote) where the District Court of Appeal said: "The denial of the right of peremptory challenge cannot be said to be a mere matter of procedure. The right is absolute. (*People* v. *Helm*, 152 Cal. 532, 535 [93 P. 99].) It is a substantial right. It has been said that it is one of the chief safeguards of a defendant against an unlawful conviction and that the courts ought to permit its freest exercise within the limitation fixed by the Legislature. (*People* v. *Edwards*, 101 Cal. 543, 544 [36 P. 7].) As said by the Supreme Court of the United States in *Hayes* v. *Missouri*, 120 U. S. 68 [7 S.Ct. 350, 30 L.Ed. 578, 580], *experience has shown that one of the most effective means to free the jury box from persons unfit to be there is the exercise of the peremptory challenge.* The right may not be abridged or denied. Arbitrary abridgment or denial of the right runs counter to principles vital to the integrity and maintenance of the system of a constitutional right of trial by jury." (Emphasis added.)

Numerous other decisions, quoted in the decisions cited in *People* v. *Diaz, supra,* reiterate as a constitutional dogma that under our jury system, the right to peremptory challenge is absolute and an "inseparable and inalienable part of the right of trial by jury guaranteed by the Constitution."

The majority of the court has recognized this principle in theory, but has just as effectively denied it in practice.

Upon the authority of *People* v. *Estorga*, 206 Cal. 81 [273 P. 575], and *People* v. *Hickman*, 204 Cal. 470 [268 P. 909, 270 P. 1117], this court has qualified the right and requires an "affirmative showing" of bias or prejudice. In neither of the above cited cases was a party deprived of a peremptory challenge. These two cases can therefore be no authority or precedent for the holding of this court.

In applying the provision of section 4½, article VI, of the California Constitution, which applies to procedural defects, and not to errors of substantive law, this court has in effect overruled a number of precedents of this court holding directly to the contrary, that the provisions of section 4½, article VI, California Constitution, do not apply where the right to peremptory challenge has been abridged.

In *People* v. *Carmichael*, 198 Cal. 534 [246 P. 62], the

court, referring to article VI, section 4½ of the Constitution, declared, page 547: "It was never intended by this provision of the constitution to take from the defendant in a criminal action his fundamental right to a jury trial or in any substantial manner to abridge this right. (*People* v. *Wismer*, 58 Cal.App. 679, 688 [209 P. 259])."

In *People* v. *Wismer*, 58 Cal.App. 679 [209 P. 259], after the defendant had exercised all of his peremptory challenges, he was compelled to accept a juror who was disqualified by reason of actual bias. The court held, page 687: "Section 4½ of article VI of the constitution has no application to the situation presented here. The right of trial by jury is fundamental—a right which came to us from the common law and as such guaranteed by the constitution—and inseparably connected therewith (indeed, it is of the very essence thereof) is the right to a trial by a jury consisting of unbiased and unprejudiced persons."

In *People* v. *Bennett*, 79 Cal.App. 76, the court stated, page 91 [249 P. 20]: "And it should always be remembered that, in the trial of a criminal case, any act or action of a trial court which must necessarily have the effect of denying to the accused a trial by a fair and impartial jury will not be excused or mitigated by the terms of section 4½ of article VI of the constitution. The right of trial by jury is fundamental."

In *People* v. *O'Connor*, 81 Cal.App. 506 [254 P. 630], the defendant was denied the right to exercise the number of peremptory challenges to which he was entitled under the statute. It was contended that section 4½ of article VI applied. The court said, page 520: "As generally defined 'procedure' includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice. (32 Cyc. 405.) Had there been no denial of the exercise of any peremptory challenges, we seriously question whether this section has any application to the cause before us. This section must refer to pleading and procedure, as authorized by the codes. Thus, to make it applicable to the pleadings, had there been any defects in the informations not affecting the substantial rights of the parties, as accorded by law, then, and in that case, the error should be held harmless. Likewise, if the court omitted to follow the procedure embodied by the codes for the arraignment and trial of the defendants upon the informations filed against them and had committed some error in so doing, which did not affect the substantial rights

of the parties, then such error in procedure would likewise be held harmless, *but, it cannot reasonably be held that section 4 1/2 of article VI is so broad in its meaning as to permit the trial court to disregard the usual and ordinary procedure in the trial of a cause and adopt a new and entirely different manner from that recognized by law. Such a course is not a mistake in procedure; it is a substitution of procedure. What would excuse a mistake in procedure would not and could not be held to allow the creation of a course unprovided for by law. Mistake is one thing; a substitution is an entirely different thing."* (Emphasis added.)

It is abundantly clear from the above cited authorities that section 4½ of article VI, since it relates to procedure, has no application where the right to peremptory challenge has been interfered with. Yet, the majority here, without citation of authority in support of its position holds that simply because "the jurors were polled and were unanimous in their verdict" the error in denying appellant his right to exercise a peremptory challenge was cured by section 4½ of article VI of the Constitution. The majority arrives at this conclusion even though it concedes that the evidence produced on behalf of appellant was amply sufficient to support a verdict and judgment in his favor.

There can be no question whatsoever that, so far as appears from the face of the majority opinion, the conclusion that no miscarriage of justice resulted was not based on a review of all of the evidence in the case but solely on the ground that there was no affirmative showing that any juror who served was biased or otherwise unfit. Of course, it is obvious from a consideration of the authorities cited in my dissenting opinion heretofore filed in this case that such a showing would be virtually impossible in view of the law relating to the unimpeachability of verdicts. But the majority does not attempt to meet this argument, but blindly invokes the provisions of section 4½ of article VI of the Constitution because the jury was unanimous in its verdict in favor of defendant.

In so holding, it is obvious that the majority do not appreciate the significance of the right to a peremptory challenge. This challenge has always existed in our law° and has a very salutary purpose. It enables the litigant to remove from the jury box a prospective juror who has failed to disclose his true mental state and who may possess deep seated prejudices against the litigant or his case which the prospective juror will not admit on *voir dire* examination. The right to remove

such a prospective juror, without disclosing the reason therefor, is a basic fundamental right guaranteed by the statutes of this state and is known and recognized by all trial lawyers to be one of the most important safeguards against the selection of those for jury duty who are disqualified because they possess a state of mind adverse to the party exercising the challenge which cannot be disclosed by *voir dire* examination. The assumption of the majority that one prejudiced juror could not bring about a unanimous verdict against a party in the face of satisfactory evidence in his favor when he has been denied the right to challenge the prejudiced juror, is not borne out by either theory or practical experience. Those who have had experience in the trial of jury cases appreciate the importance of eliminating from juries those who have preconceived notions as to what result should be reached regardless of the evidence, and many tales have been told and more remain untold of how one or two overzealous jurors have brought about a verdict against the weight of the evidence. In this connection I cannot refrain from repeating the warning I so often heard from my venerable father that one rotten apple will spoil the whole barrel. While this was applied to an occasional bad boy in the community, it is just as applicable to jurors or other small groups.

It is traditional in our judicial system that the jury selected to try a case should be fair and impartial. The Legislature has endeavored to prescribe a system for the selection of juries which will as nearly as possible guarantee to litigants a jury composed of fair and impartial persons. This court has held unanimously in this case that the system provided by the Legislature for the selection of juries was not followed in this case. That there was a substantial departure from the system so prescribed there can be no question. Such being the case, the plaintiff was not accorded the type of jury trial guaranteed by the laws of this state. The majority concedes that this was error. There is only one way to cure this error and that is to grant plaintiff a new trial. To do otherwise is to deny to plaintiff the equal and exact justice to which he is entitled, by the verdict of a jury impartially selected, which Thomas Jefferson declared to be one of the principles which "form the bright constellation which has gone before us." (First Inaugural Address, March 4, 1801.)